# THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781 HEALTH AND WELFARE FUND | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 07 C 6878 ) |
| SUNNYSIDE CORPORATION, an Illinois Corporation, | ) JUDGE KENNELLY ) MAGISTRATE JUDGE VALDEZ ) |
| Defendant. | ) |

## DEFENDANT'S EXHIBIT LIST REGARDING ITS MOTION TO STAY LITIGATION PENDING ARBITRATION

1.   Exhibit A:   Collective bargaining agreement between Sunnyside and the Miscellaneous Warehousemen's Local 781.[1]

2.   Exhibit B:   Trust Agreement.

3.   Exhibit C:   Plan Documents.

4.   Exhibit D:   Grievance Report and related Correspondence.

5.   Exhibit E:   September 15, 2007 letter.

6.   Exhibit F:   October 1, 2007 letter.

7.   Exhibit G:   Correspondence dated November 29, 2007, October 15, 2007 and September 12, 2007.

8.   Exhibit H:   December 3, 2007 Demand for Arbitration by Union.

---

[1]   The full name for this union is the Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire and Rental, Chemical and Petroleum, Ice, Paper, and Related Clerical and Production Employees Union, Local 781, affiliate of the International Brotherhood of Teamsters.

**EXHIBIT A**

# AGREEMENT



OIL, PETROLEUM, CHEMICAL AND ATOMIC ENERGY EMPLOYEES

and

MISCELLANEOUS WAREHOUSEMEN, AIRLINE,
AUTOMOTIVE PARTS, FURNITURE, TIRE AND RENTAL,
CHEMICAL AND PETROLEUM, ICE, PAPER AND
RELATED CLERICAL AND PRODUCTION EMPLOYEES UNION

LOCAL NO. 781

INTERNATIONAL BROTHERHOOD OF TEAMSTERS

2007          MARCH

TABLE OF CONTENTS

ARTICLES OF AGREEMENT-------------------------------------------------------------------------PAGE 1

ARTICLE I -------------------------------------------------------------------------------------------PAGE 1

ARTICLE II
WAGES-----------------------------------------------------------------------------------------------PAGE 1

ARTICLE III
MANAGEMENT RIGHTS------------------------------------------------------------------------------PAGE 3

ARTICLE IV
HOURS------------------------------------------------------------------------------------------------PAGE 4

ARTICLE V
HOLIDAYS--------------------------------------------------------------------------------------------PAGE 4

ARTICLE VI
SUNDAYS---------------------------------------------------------------------------------------------PAGE 5

ARTICLE VII
SATURDAYS------------------------------------------------------------------------------------------PAGE 5

ARTICLE VIII
PREMIUM PAY---------------------------------------------------------------------------------------PAGE 5

ARTICLE IX
DAILY GUARANTEE----------------------------------------------------------------------------------PAGE 5

ARTICLE X
WEEKLY GUARANTEE--------------------------------------------------------------------------------PAGE 6

ARTICLE XI
VOLUNTARY ABSENTEEISM-------------------------------------------------------------------------PAGE 6

ARTICLE XII
VACATIONS-------------------------------------------------------------------------------------------PAGE 6

ARTICLE XIII
EMPLOYEE BENEFITS FOR OTHER THAN THE MAJOR OIL COMPANIES---------------------------PAGE 7

ARTICLE XIV
SENIORITY--------------------------------------------------------------------------------------------PAGE 8

ARTICLE XV
HEIRS, SUCCESSORS AND ASSIGNS---------------------------------------------------------------PAGE 9

ARTICLE XVI
UNIFORMS--------------------------------------------------------------------------------------------PAGE 9

ARTICLE XVII
NOTICE------------------------------------------------------------------------------------------------PAGE 9

ARTICLE XVIII
LAY-OFFS------------------------------------------------------------------------------------PAGE 9

ARTICLE XIX
VALIDITY------------------------------------------------------------------------------------PAGE 10

ARTICLE XX
WORKER'S COMPENSATION-------------------------------------------------------------PAGE 10

ARTICLE XXI
STEWARDS-----------------------------------------------------------------------------------PAGE 10

ARTICLE XXII
PICKET LINE--------------------------------------------------------------------------------PAGE 10

ARTICLE XXIII
UNION SECURITY--------------------------------------------------------------------------PAGE 11

ARTICLE XXIV
CHECK-OFF----------------------------------------------------------------------------------PAGE 11

ARTICLE XXV
INTERESTS-----------------------------------------------------------------------------------PAGE 11

ARTICLE XXVI
VERBAL CONTRACTS---------------------------------------------------------------------PAGE 11

ARTICLE XXVII
WAIVER OF LIABILITY------------------------------------------------------------------- PAGE 12

ARTICLE XXVIII
GRIEVANCE PROCEDURE----------------------------------------------------------------PAGE 12

ARTICLE XXIX
TIME CLOCKS-------------------------------------------------------------------------------PAGE 13

ARTICLE XXX
JURY DUTY-----------------------------------------------------------------------------------PAGE 14

ARTICLE XXXI
FUNERAL LEAVE----------------------------------------------------------------------------PAGE 14

ARTICLE XXXII
STATUS OF BENEFITS DURING TIME OFF WITHOUT PAY----------------------------PAGE 14

ARTICLE XXXIII
MISCELLANEOUS---------------------------------------------------------------------------PAGE 14

ARTICLE XXXIV
RULES OF CONDUCT-----------------------------------------------------------------------PAGE 17

ARTICLE XXXV
UNION INSPECTION------------------------------------------------------------------------PAGE 22

ARTICLE XXXVI----------------------------------------------------------------------------PAGE 23
SAFETY SHOES

ARTICLE XXXVII
CONTRACT DURATION--------------------------------------------------------------------PAGE 23

SIGNATURE PAGE-----------------------------------------------------------------------------PAGE 23

APPENDIX A
JOB CLASSIFICATION---------------------------------------------------------------------PAGE 24

ARTICLES OF AGREEMENT

THIS AGREEMENT, made and entered into by and between SUNNYSIDE CORPORATION hereinafter referred to as the "Employer", and MISCELLANEOUS WAREHOUSEMEN, AIRLINE, AUTOMOTIVE PARTS, SERVICE, TIRE AND RENTAL CHEMICAL AND PETROLEUM, ICE, PAPER AND RELATED CLERICAL AND PRODUCTION EMPLOYEES UNION, LOCAL NO. 781, an affiliate of the International Brotherhood of Teamsters, hereinafter referred to as the "Union", acting as the sole and exclusive bargaining unit set forth in Article I.

ARTICLE I

The bargaining unit covered by this Agreement shall consist of the Employer's working foreman, blenders, tankermen, gaugers, maintenance men, yardmen, loaders, warehousemen and laborers at 225 Carpenter Avenue, Wheeling, Illinois 60090-6095 (or at any other bulk plant, terminal, warehouse or establishment hereafter set up within the jurisdiction of the Union referred to above where employees currently covered by this Agreement are employed) by the Employer signatory to this Agreement.

ARTICLE II

WAGES

EFFECTIVE APRIL 1, 2007

For all employees hired prior to January 16,1986 the wage shall be:

| | |
|---|---|
| WORKING FOREMAN | $20.96 |
| MAINTENANCE MAN | $20.70 |
| INDUSTRIAL PROCESSOR | $20.70 |
| GENERAL FACTORY | $17.65 |

For all employees hired on or after January 16, 1986, the wage shall be:

| | START | 30 DAYS | 5 MONTHS | 1 YEAR |
|---|---|---|---|---|
| Working Foreman | $19.61 | | $20.03 | $20.96 |
| Maintenance Man | $19.56 | | $19.72 | $20.70 |
| Industrial Processor | $19.56 | | $19.72 | $20.70 |
| General Factory | $10.51 | $11.23 | $12.26 | $15.58 |

EFFECTIVE APRIL 1, 2008

For all employees hired prior to January 16, 1986, the wages shall be:

| | |
|---|---|
| WORKING FOREMAN | $21.69 |
| MAINTENANCE MAN | $21.42 |
| INDUSTRIAL PROCESSOR | $21.42 |
| GENERAL FACTORY | $18.27 |

For all employees hired on or after January 16, 1986, the wage shall be:

| | START | 30 DAYS | 6 MONTHS | 1 YEAR |
|---|---|---|---|---|
| Working Foreman | $20.30 | | $20.73 | $21.69 |
| Maintenance Man | $20.24 | | $20.41 | $21.42 |
| Industrial Processor | $20.24 | | $20.41 | $21.42 |
| General Factory | $10.88 | $11.62 | $12.26 | $16.13 |

EFFECTIVE APRIL 1, 2009

For all employees hired prior to January 16, 1986, the wage shall be:

| | |
|---|---|
| WORKING FOREMAN | $22.45 |
| MAINTENANCE MAN | $22.17 |
| INDUSTRIAL PROCESSOR | $22.17 |
| GENERAL FACTORY | $18.91 |

For all employees hired on or after January 16, 1986, the wages shall be:

| | START | 30 DAYS | 5 MONTHS | 1 YEAR |
|---|---|---|---|---|
| Working Foreman | $21.01 | | $21.46 | $22.45 |
| Maintenance Man | $20.95 | | $21.12 | $22.17 |
| Industrial Processor | $20.95 | | $21.12 | $22.17 |
| General Factory | $11.26 | $12.03 | $12.79 | $16.69 |

2

**TEMPORARY UPGRADES:**

Employees required to work for two (2) hours or more per day in a labor classification higher than their own will be paid that higher rate. Employees required to work less than two (2) hours in a classification higher than their own will be paid their regular rate of pay.

**WORK IN UNION'S JURISDICTION:**

No work of this Union's jurisdiction shall be done at any bulk plant, warehouse or terminal except by members of this Union, including loading or unloading of trucks.

**SHIFT DIFFERENTIAL:**

Any shift starting between the hours of 4:00 P.M. and 12:00 P.M. Midnight will receive premium pay of
.35¢ per hour starting April 1, 2007.
.45 ¢ per hour starting April 1, 2008.
.55¢ per hour starting April 1, 2009.
Any shift starting between the hours of 12:01 A.M. and 6:00 A.M. will receive premium pay of
.50¢ per hour starting April 1, 2007.
.65¢ per hour starting April 1, 2008.
.80¢ per hour starting April 1, 2009.
If an employee starts his regular shift at 9:00 A.M., he will receive shift differential for the hours worked after 4:30 P.M.

**CALLOUT PAY:**

Whenever an employee is called for duty outside of his regular working hours he shall receive pay for actual time worked at one and one-half (1 ½) times his regular rate with a minimum of four (4) hours pay at his regular rate. In the event no work shall be required of an employee called out, he shall be compensated for three (3) hours at his regular rate of pay.

## ARTICLE III

## MANAGEMENT RIGHTS

The Union recognizes and agrees that the Employer reserves and retains the sole and exclusive right to manage its business and to direct the working force except only to the extent that the express provisions of this Agreement specifically limit or qualify this right. The Employer's right to manage its business includes, but is not limited to, the right to hire, promote, transfer, assign and direct employees; to discipline, suspend and discharge for just cause; to retire or relieve employees from duty because of lack of work or other legitimate reasons; to make, enforce and revise reasonable rules of conduct and regulations not inconsistent with the provisions if this Agreement; to increase or decrease the working force; to determine the number of departments and the work to be performed therein; to determine processes to be employed; to determine quality and establish reasonable work standards; to determine the number of hours per day or per week operations shall be carried on; to establish and change work schedules and assignments; to subcontract; to discontinue or relocate all or any portion of the operations; to schedule hours of work, including overtime; to reduce the normal workweek of all employees because of business necessity; to add shifts or terminate existing shifts in accordance with customer needs; to determine job content and classifications required; and to maintain safety, efficiency and order at the plant.

## ARTICLE IV
## HOURS

Employees may be scheduled on any of three (3) shifts, the first shift starting between 6:00 and 9:00 A.M. and shall continue for consecutive hours until the conclusion of the shift. The second shift starting between 4:00 and 6:00 P.M. and continuing for consecutive hours to the conclusion of the shift. The third shift shall start at midnight and continue for consecutive hours to the conclusion of the shift. Shifts shall be posted on Friday for the following week. Monday shall be considered the first day of the work week. Time and one-half (1 ½) shall be paid for all work performed before or after an employee's regularly scheduled hours but overtime payments shall not be paid twice for the same hours worked. The Employer agrees not to request or require unreasonable overtime to be worked.

ASSIGNMENT OF OVERTIME

Assignment of overtime on Saturday, Sundays and holidays shall be done in the order of seniority within the job classification. All other overtime assignments shall be given to the individual actually performing the job or jobs involved in the overtime in question. Additional daily overtime assignments will be made in the basis of seniority in the classification and, if necessary, by overall plant seniority. Mandatory overtime will be assigned in the reverse order of seniority.

MEALTIMES

Hours of labor will be continuous from starting time to quitting time of each shift with one-half (½) hour for meals, such mealtime not to be paid for by the Employer. Mealtimes shall be taken during the three (3) hour period constituting the fourth, fifth and sixth hours of the shift.

SCHEDULING

Employees shall have the right to select shifts and scheduled starting time of any shift by order of seniority in the event a permanent vacancy occurs provided, however; that the Employer shall not be required to assign an employee to a shift for which he is not qualified.

JOB POSTING

Whenever a permanent job vacancy occurs such job opening shall be posted on the bulletin board for four (4) days. Anyone desiring to bid on such job opening must do so in that period of time. If two or more employees bid on the same job, the senior employee shall be given the opportunity to fill the job provided he is qualified.

## ARTICLE V
## HOLIDAYS

Employees shall be paid a day's pay for the following holidays when such holiday or holidays fall within the regular work week, Monday through Friday, or on Saturdays:

New Year's Day
Memorial Day
Fourth of July
Labor Day
Thanksgiving Day
Friday After Thanksgiving Day
Christmas Day
Veteran's Day
Employee's Birthday
Two Floating Holidays

*With respect to all employees hired after April 1, 1992, they must have completed one year of service in order to be eligible for an employee's birthday.

4

Employees who work on the holidays specified above shall receive double time their regular rate of pay for each hour worked in addition to the holiday pay provided in the immediately preceding sentence.

An employee called to work on any holiday shall be guaranteed eight (8) hours of work or its equivalent in pay, for such holiday work in addition to the holiday pay provided above. Holiday shifts for employees shall be such employees' regularly scheduled work shift in effect for the week during which the holiday occurs, or shall begin at 8:00 A.M. at the option of the Employer. In the event any employee is absent the day before or the day after a holiday, unless either day is Sunday or another holiday or an unscheduled workday, he shall not receive holiday pay until proof of sickness or excusable absence is established. A holiday falling on Saturday shall be celebrated on Saturday or the preceding Friday at the option of the Employer. Any holiday falling on Sunday shall be celebrated on the following Monday.

## ARTICLE VI

## SUNDAYS

If employees are asked to work Sunday, they shall be paid at the rate of two (2) times their regular rate of pay with a guarantee of eight (8) hours of work.

## ARTICLE VII

## SATURDAYS

If employees are called or put to work on Saturday (except if such day is a holiday), they shall be guaranteed a minimum of four (4) consecutive hours of work, to begin at the starting time of their regularly scheduled shift, at the rate of one and one-half (1 ½) times the employee's regular straight time rate of pay. The employee shall be notified not later than the preceding work shift of such request to report for work. All such work performed on Saturday shall be reasonably and equitably allocated to employees on a rotating basis. Any employee requested to work on Saturday shall do so excepting in cases of reasonable excuses acceptable to the Employer.

## ARTICLE VIII

## PREMIUM PAY

Premium pay for daily overtime work under ARTICLE IV shall be credited on statutory overtime, if any, to the extent the daily overtime work results in such statutory overtime. Premium pay under ARTICLE V (Holidays), ARTICLE VI (Sundays), and ARTICLE VII (Saturdays), shall be credited on daily and statutory overtime to the extent such premium work results in such daily or statutory overtime.

## ARTICLE IX

## DAILY GUARANTEE

Any employee, upon completion of 150 days probationary period, assigned to work on ANY day, excepting Saturday, shall be guaranteed a minimum of eight (8) hours pay at the proper rate per hour.

## ARTICLE X

### WEEKLY GUARANTEE

The Employer agrees and guarantees to furnish to each of his employees, upon completion of the 180/day probation period, a minimum work week of five (5) consecutive eight (8) hour days, Monday through Friday, inclusive for any week during which and employee is scheduled to work.

## ARTICLE XI

### VOLUNTARY ABSENTEEISM

In the event an employee finds it necessary to take time off during the regular work week which prevents the employee from completing the guaranteed forty (40) hours of work in that week, the Employer will pay the employee at the applicable rate per hour for all time worked. It is agreed between the Employer and the Union that in the event any employee member of this Union abuses the terms of this paragraph, that the Union will call such offending employee before the Executive Board of the Union and warn the offending employee member of the possible consequences of further abuses.

## ARTICLE XII

### VACATIONS

It is agreed that employees shall at the end of fifty-two (52) weeks' continuous service with the Employer be entitled to two (2) weeks' vacation with full pay at regular rate existing at time of vacation. After five (5) years of continuous service with the Employer, employees shall be entitled to three (3) weeks' vacation with full pay at regular rate existing at time of vacation. After ten (10) years of continuous service with the Employer, employees shall be entitled to four (4) weeks' vacation with full pay at regular rate existing at time of vacation.

After twenty (20) years of continuous service with the Employer, employees shall be entitled to five (5) weeks' vacation with full pay at regular rate at existing time of vacation. If, after fifty-two (52) weeks' continuous service, an employee either resigns or is discharged before receiving his vacation, he shall receive pay in lieu of the vacation due him. This is void in cases of dishonesty or drunkenness. When an employee's granted vacation period includes one of the herein specified unworked paid holidays for which the employee would have been compensated had he not been on vacation, the employee is to be given an extra day's vacation with pay to be added to his scheduled vacation period or a day's pay in lieu thereof at the option of the Employer.

In case of layoffs due to curtailment of the Employer's business operations, illness, injury or leave of absence, the employee shall be entitled to receive his proportionate share of the vacation period earned by reason of his continuous service. After one year of employment, vacations of two (2) weeks shall be prorated on the basis of five-sixths (5/6) of a day for each month worked and vacation of three (3) weeks shall be prorated on the basis of one and one quarter (1 1/4) days for each month worked, and vacations of four (4) weeks shall be prorated on the basis of one and two-third (1 2/3) days for each month worked. In case of layoffs, resignations, or discharges, except for dishonesty or drunkenness, the employee shall receive his prorated share of accrued vacation pay. Employees must have worked a minimum of 1800 hours in the past twelve (12) calendar months in order to be eligible for a full non prorated vacation.

Vacations of employees employed on a seasonal basis shall be prorated on the basis of five-sixths (5/6) of a day for each month worked and, in the case of layoffs or resignations, the employees shall receive his prorated share of accrued vacation pay. Prorata vacation pay shall be computed at the conclusion of each period of employment with this Employer and shall not be carried over from one season to another.

6

All vacations under this Agreement and/or Amendment shall be uniformly paid for at the straight time rate. Vacation pay shall also include any night shift differential the employee normally receives. Vacation pay shall be based on 2% of the annual earnings or forty (40) hours pay weekly, whichever is the greater. Employees who qualify for three (3) or more weeks of vacation may be allowed to split on the basis of one or more vacation weeks according to seniority.

Vacations can be scheduled anytime between January 1st and December 31st of each year. Vacations will be scheduled by order of seniority and overlapping will be allowed only by mutual agreement between employer and employee subject to employer's production schedule.

Employees may utilize all accrued vacation pay in single day increments.

ARTICLE XIII

HEALTH & WELFARE

SECTION 1

Commencing with April 1, 2007, the Company shall pay the sum of $715.00 per month for each regular employee covered by this Agreement who has been on the payroll thirty (30) days or more to the Miscellaneous Warehousemen's Local 781 Health & Welfare Fund. Such payments shall be made to the Miscellaneous Warehousemen's Local 781 Health & Welfare Fund in accordance with the trust instrument establishing said Health & Welfare Fund. The Company ratifies and confirms the appointment of the Employer trustees, who shall, together with their successor trustees, designated in the manner provided in said trust instrument, and jointly with an equal number of trustees appointed by the Union, carry out the terms and conditions of the trust instrument.

Whenever the Union in its sole discretion determines that the Employer is delinquent in making payments to the Health & Welfare Fund, as required under this Agreement or the rules and regulations of the Fund, then the Union may strike the Employer to enforce payment. This provision shall not be subject to and is specifically excluded from the Grievance Procedure. The Employer shall be responsible for any losses of any Health & Welfare benefits resulting thereby, and reimbursement for all wages lost because of any action taken by the Union. Action for delinquent Health & Welfare contributions may be instituted by either the Local Union or the trustees. Employers who are delinquent must also pay all attorneys' fees and costs of collections.

(a)    If an employee is absent because of a non-occupational illness or injury, the Employer shall continue to make the required contribution for a period of four weeks, or until the employee returns to work, whichever period is shorter.

(b)    If the employee is absent because of an occupational illness or injury, the required contribution shall be made for a period of six (6) months, or until the employee's return to work, whichever is the shorter period.

(c)    The obligation to make the above contributions shall continue when the Collective Bargaining Agreement is being negotiated.

(d)    All Leaves of absence when granted by the Employer, in addition to the requirements of the parties, shall be conditioned upon the employee and the Employer making satisfactory arrangements for paying the required contribution to the Health & Welfare Fund, and at all time the payments shall be made by the Employer for the period of such granted leave of absence.

(e)    The Employer agrees to pay any increase in the above contribution rates, that the Trustees for the Health & Welfare Fund deem necessary to maintain the current benefit level.

7

(f)    In the event the Employer fails to pay the monthly contribution to the Fund on behalf of any employee covered hereunder, the Employer agrees to be responsible for the benefits which would have been provided by such insurance coverage.

SECTION 2

(a)    Accident and Sickness pay will be increased to $200 per week, 4/1/95.

(b)    The dental plan calendar year limit which is currently $1,000 will be increased to $1,250, 4/1/97.

ARTICLE XIV

SENIORITY

Seniority shall prevail and is a part of this Agreement.  Seniority shall be accumulated during time worked as an employee for the Employer signatory to this Agreement, unless modified or terminated by the following provisions of this Article.

PROBATIONARY PERIOD

The probationary period for newly hired full-time employees or employees hired after a break in continuous service shall be 180 calendar days. During the probationary period, an employee may, in the Employer's sole discretion, be discharged without recourse to the grievance or arbitration provision of this Agreement.  During the probationary period, employees shall have no seniority or recall rights.  Upon completion of the probationary period, the employee's seniority shall be computed as of the date of hire.  Unless otherwise specified in this Agreement, during the first 180 calendar days, a probationary employee shall not be entitled to holiday pay, vacation benefits, leaves of absence, funeral leave, jury duty benefits or the benefits provided herein.

LAY-OFFS AND TERMINATION OF SENIORITY

Seniority shall terminate for any of the following reasons:

(a)    Discharge, unless reversed by Settlement of Differences procedures provided for in Article XXVIII.

(b)    Voluntary quit or resignation.

(c)    Lay-off or non-occupational illness in excess of one (1) year.

(d)    Failure to report upon recall.

Re-employment shall be in the reverse order of layoffs, that is, the last employee laid off and still holding retained seniority shall be the first to be offered re-employment.  A laid-off employee shall be given seven (7) working days' notice of recall by Registered Mail at last known address and in the event such employee has not reported for work by the end of the said seven (7) days, then he shall lose all seniority rights.

8

SENIORITY LIST

A separate seniority list shall be posted at each plant and these lists will be furnished the Union upon request but not more frequently than once each quarter.

## ARTICLE XV

## HEIRS, SUCCESSORS AND ASSIGNS

This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceeding, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. It is understood by this Section that the parties hereto shall not use any leasing device to a third party to evade this contract. The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc. of the operation covered by this Agreement or any part thereof. Such notice shall be in writing with a copy to the Union not later than the effective date of the sale.

## ARTICLE XVI

## UNIFORMS

The Employer shall furnish uniforms in the following manner to those who request them.

Employers shall furnish their General Factory employees seven (7) shirts and seven (7) pants and keep them repaired without cost to the employee. Employers shall furnish their Maintenance, Industrial Processor and Working Foreman employees eleven (11) shirts and eleven (11) pants and keep them repaired without cost to the employee. All uniforms shall bear the Union label. If the Employer has a uniform program in excess of this benefit, the Employer will maintain the superior uniform program. If an uniform is torn, tattered and or worn out, a replacement uniform will be provided.

## ARTICLE XVII

## NOTICE

It is agreed that any member of this Union wishing to quit his position shall give his Employer one (1) week's notice. At the expiration of the week, whether the employee resigns or is discharged, the member shall receive monies due him.

## ARTICLE XVIII

## LAY-OFFS

The Employer reserves the right to lay-off employees according to seniority when there is not sufficient work to keep the present force employed. However, no lay-offs will be effective except on the first day of any week, except in extreme cold weather when extra fuel oil employees are needed or when extra employees are needed for sick relief or vacation periods. In the aforementioned cases, the Employer agrees to guarantee not less than eight (8) consecutive hours of work, to be paid for at the hourly rate as shown herein.

ARTICLE XIX

VALIDITY

In the event any provision of this Agreement shall be finally held to be invalid or unenforceable, the remaining provisions of this Agreement shall not be affected thereby but shall continue in full force and effect. It is further agreed that in the event any such provision is finally held to be invalid, the parties hereto agree to meet within thirty (30) days thereafter to discuss a modification of, or substitution for, such clause or clauses so held to be invalid.

ARTICLE XX

WORKER'S COMPENSATION

It is mutually agreed by and between the parties hereto that the statutory provisions of the Illinois Workers' Compensation Act, the Illinois Workers' Occupational Diseases Act and the Federal Employees' Liability Act shall be part of this Agreement and where the Employer comes under the jurisdiction of any of these Acts, he will promptly comply with all the provisions of these said Acts. Further, it is agreed between the parties that the statutory provisions of the Federal Social Security Act and the Federal Old Age Pension Act shall promptly be complied with, and shall cover all employees covered by this Agreement. The Employer agrees to allow any officer of the Union to examine the policies or the financial set up of the group guaranteeing liability insurance to the member of the Union.

ARTICLE XXI

STEWARDS

The proper officers of the union may appoint or elect a Steward or Stewards whenever they deem necessary at any plant under the jurisdiction of this Agreement. The Stewards shall have authority to collect dues, assessments and initiation fees at such time and in such manner as shall not interfere with their duties as employees. They may represent employees in presenting grievances and in interpreting the Agreement if the Employer is so notified in writing by the Union. Stewards shall in no event engage in or encourage any work stoppage, and they shall be subject to disciplinary action, including discharge, by the Employer for committing any acts prohibited herein, and such disciplinary action shall not be subject to grievance procedure, unless filed by an authorized officer of the Union within ten (10) days following the effective date of such disciplinary action.

ARTICLE XXII

PICKET LINE

It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, in the event an Employee refuses to enter upon any property involved in a primary labor dispute, or refuse to go through or work behind any picket line, including the primary picket line of Unions party to this Agreement, and including primary picket line at the Employer's places of business.

10

## ARTICLE XXIII

## UNION SECURITY

It is mutually agreed, subject to any limitation imposed by law; that:

(a)    All employees covered by this Agreement who are members of the union as of the effective date of this provision, and all those employees who become members after that date, shall maintain their membership in good standing in the Union as a condition of continued employment with the Employer.

(b)    All new employees covered by this Agreement shall become members of the Union on the thirty-first day of Employment and shall maintain their membership in Good standing in the Union as a condition of continued Employment with the Employer. The term "members in good standing" shall be limited to the payment of initiation fees and membership dues uniformly required as a condition of acquiring or maintaining membership.

(c)    An employee who has failed to acquire or thereafter maintain membership in the Union as herein provided shall be terminated seventy-two (72) hours after his Employer has received written notice from an authorized representative of the Union certifying that membership has been, and is continuing to be offered to such employee on the same basis as all other members and, further, that the employee has had notice and opportunity to make all dues payments.

## ARTICLE XXIV

## CHECK-OFF

Upon written authorization voluntarily submitted by an employee covered by this Agreement, the Employer will withhold and deduct regular union dues, assessments or initiation fees and remit the same to the Union. The amounts to be deducted shall be certified to the Employer by the Union and shall be made monthly. The provisions of this Article and the check-off cards shall be effective in accordance with and consistent with applicable law. The union shall indemnify and hold the Company harmless from any claims, suits, demands and liabilities which may arise by reason of the Company's compliance with this Article.

## ARTICLE XXV

## INTERESTS

The members of the Union agree to further the interest of the Employer.

## ARTICLE XXVI

## VERBAL CONTRACTS

It is agreed by the undersigned that no written or verbal contracts will be made which will conflict with terms of this Agreement.

11

ARTICLE XXVII

WAIVER OF LIABILITY

There shall be no strike or lockout during the term of this Agreement. The Union shall not be responsible for unauthorized acts of any person merely because he is a member of the Union, and the Employer shall not file any suit against the union for damages under the Labor Management Relations Act of 1947 based on the claim that the Union is responsible for the unauthorized act of any person solely because he is a member of the Union or because he is represented by the Union. The Employer shall be privileged to discipline employees responsible for or engaging in such unauthorized activities, including the right to discharge, which discipline by the Employer shall not be subject of a grievance, unless such grievance is filed by an authorized officer of the Union, within ten (10) days following the effective date of the disciplinary action. If the final decision of the Committee of Arbitration is not lived up to, the aggrieved parties are relieved from the no strike or no lockout pledge made herein.

ARTICLE XXVIII

GRIEVANCE PROCEDURE

For the purpose of this Agreement, a grievance is defined as (1) a dispute as to the interpretation and application of a specific provision of this Agreement, or (2) a charge of violation of a specific provision of this Agreement.

It is agreed that the maintenance of harmonious relations between the parties requires the prompt filing and disposition of grievances. Any grievance, therefore, which arises shall be presented within three (3) working days of its occurrence. A grievance of any employee or a joint grievance of any group of employees shall be presented to Management in the following manner:

STEP 1. The grievance shall be referred to the Steward who will take it up with his Foreman orally, with or without the grievant being present. If a satisfactory settlement is not reached within three (3) days, the grievance shall be reduced to writing, signed by the grievant and forwarded to the Supervisor or his designated representative within three (3) working days.

STEP 2. The Supervisor or designated representative will, upon receipt of a written grievance, meet with the Steward and the aggrieved employee (if he wishes to be present) within three (3) working days. The Supervisor will give a written reply within five (5) working days of the meeting. If the reply of the Supervisor does not satisfactorily adjust the grievance, the Union shall appeal the grievance no later than five (5) working days following the Employer's Step 2 reply.

STEP 3. Within five (5) working days of the Step 2 appeal by the Union, the Management's grievance committee shall meet with the Union's grievance committee consisting of the Steward and Business Representative in an effort to resolve the grievance. The party initiating the grievance shall be given a written reply within five (5) working days of the meeting between the Management Committee and the Union committee. If a satisfactory settlement is not reached, either party shall notify the other party within seven (7) working days that they are appealing the grievance to Step 4 of the grievance procedure.

STEP 4. The grievance shall be referred to a Management Committee. The Union Committee shall consist of a Business Representative and / or one (1) official of the Local Union. The above parties shall meet within fifteen (15) working days following the date such grievance is referred to the Step 4 Committee. The Employer shall give the Union a written reply within seven (7) working days following the Step 4 meeting. The Union shall notify the Company, in writing, no later than seven (7) working days of the Company's

12

Company's Step 4 reply to the grievance that the grievance is to be referred to arbitration.

STEP 5. ARBITRATION

1.    The party initiating arbitration shall meet with the other party to select an arbitrator within five (5) working days of the notice by the initiating party that they desire arbitration. If the parties fail to select an arbitrator, application shall be made to the Federal Mediation and Conciliation Service for a panel of arbitrators to serve in accordance with its rules within five (5) working days after the parties fail to select an arbitrator.

2.    The expenses and compensation of the arbitrator selected and all other expenses incurred in connection with the Federal Mediation and Conciliation Service shall be borne equally between the parties.

3.    The arbitrator will consider only matters which have been properly carried through all steps of the grievance procedure and he will endeavor to render a decision within thirty (30) days after the hearing. The decision of the arbitrator shall be final and binding upon the Employer, the Union, and the employee. No more than one (1) grievance may be submitted to an arbitrator at a time.

4.    It is agreed that no arbitrator may change or modify or add to or disregard any term or provision of this Agreement. The arbitrator may only rule on specific provisions of this Agreement and may not entertain any grievance which is not covered by a specific provision of this Agreement. An arbitration award shall be in writing and shall be final and binding upon the parties. The decision of the Employer involving discipline and discharge shall be reversed only if it is found that the Employer acted without just cause.

5.    No award of retroactive pay shall extend back more than (10) days beyond the date on which the grievance was first presented in writing.

6.    It is understood that stewards have full time work to perform for the Employer and that time devoted to the handling of grievances will not be abused by the Union. A steward shall be permitted to spend reasonable amount of time during his working hours without loss of pay to assist in the adjustment of grievances provided prior arrangements satisfactory to his supervisor are made.

7.    If any of the time limits established by the grievance and arbitration procedures are not met or are not extended by mutual agreement between the parties, the grievance shall become null and void.

8.    The Union Negotiating Committee, consisting of no more than three (3) employees, shall be paid for time lost from their normal work schedule.

ARTICLE XXIX

TIME CLOCKS

At the Union's request the Employer agrees to discuss with the Union as soon as mutually convenient, the form or preparation of accurate time records, either time clock cards or time sheets prepared by or initialed by the individual employees.

13

## ARTICLE XXX

### JURY DUTY

Employees on the payroll with one or more years of service will be reimbursed for any loss of income at their regular forty (40) hour workweek rate incurred during time spent on jury service with a maximum of two (2) weeks. The annual period for the purpose of this Article shall be the anniversary date of this Agreement.

In order to be eligible for jury service pay, an employee must:

(a)    Report for work if the employee is not performing jury duty services and there is four or more hours remaining on his regular shift; and

(b)    Present to the Employer documents or other acceptable evidence of the amount of money received from the court for jury services.

On any day a second or third shift employee reports for jury service, he will not be required to work that day.

## ARTICLE XXXI

### FUNERAL LEAVE

In the event an employee is obligated to absent himself from work in order to attend or observe the funeral upon the death of a member of his family, such employee shall be permitted a maximum of three (3) days absence with pay, provided that the deceased actually was a member of the immediate family of the employee in one of the following relationships: Mother, Father, Spouse, Child, Brother, Sister, Mother-In-Law or Father-In-Law and grandparents of the employee or spouse. In the event the funeral is 150 miles or more from the plant, the employee shall be entitled to take up to a maximum of two additional scheduled work days off without pay.

## ARTICLE XXXII

### STATUS OF BENEFITS DURING TIME OFF WITHOUT PAY

It is understood that employees who are off work, regardless of the reason, without pay, shall not earn or be eligible for personal days, holidays, funeral leave, jury duty leave, medical care coverage or any other benefits regardless of kind or nature unless otherwise specifically provided for herein.

## ARTICLE XXXIII

### MISCELLANEOUS

PERSONAL LEAVE

All employees hired prior to January 16, 1986, shall be allowed a total of five (5) days' personal leave.

All employees hired on or after January 16, 1986, shall earn personal leave in the following manner:

1 year of continuous service   - 2 days

14

2 years of continuous service  - 3 days
3 years of continuous service  - 4 days
4 years of continuous service  - 5 days

Personal leave shall be taken in any calendar year, which shall be paid at the employee's regular hourly rate for each hour of such personal leave.

## COMPENSATION CLAIMS

An employee who was injured on the job, and is sent home, or to a hospital, or who must obtain medical attention, shall receive pay at the applicable hourly rate for the balance of his regular shift on that day.  An employee who has returned to his regular duties after sustaining a compensable injury who is required by the Workers' Compensation doctor to receive additional medical treatment during his regularly scheduled working hours shall receive his regular hourly rate of pay for such time.

## MILITARY LEAVE OF ABSENCE

The Employer will pay the Health & Welfare and Pension Fund contribution on employees on leave of absence for training in the Military Service or National Guard, but not to exceed fourteen (14) days.

## NON-DISCRIMINATION

It is the continuing policy of the Employer and the Union that the provision of this Agreement shall be applied to all employees without regard to race, color, religion, sex, national origin or age, or disability.

## USERRA

The Company will comply with all applicable federal laws relating to employees who enter the Armed Services of the United States including the Uniformed Services Employment and Re-employment Rights Act of 1994.

## SAFETY SHOES

If an employee is required to wear safety shoes, the Employer will pay one dollar and forty-five cents ( $1.45) weekly toward the cost of those safety shoes.  The employee may purchase a new pair if he turns in the old pair.  The employee is to wear these shoes on the job and is not to wear them home.  If the Employer has a safety shoe program, in excess of this benefit, the Employer will maintain the superior safety shoe program.

## O.S.H.A. STANDARD

The employees and the Employer agree to comply with the Occupational Safety and Health Act.  The employee will properly utilize the equipment furnished by the Employer.

## ABSENTEE CONTROL PROGRAM

Over the years, we have been exposed to excessive absenteeism within the plant, notwithstanding the Company and the Union's efforts to improve our position, thus requiring our establishing the following guidelines.

Any employee who exceeds 5 unexcused absences in any 12-month period is identified as an absentee problem. Unexcused absences with problem absentee employees will be treated with progressive discipline.  Any absentee problem employee who is absent because of illness or other acceptable reason must provide acceptable proof to the Company.

This proof should be presented to the supervisor at the time the employee returns to work.  Failure to do so will

change the absence to unexcused and will result in progressive disciplinary action.

On Occasion, the supervisor may request suitable evidence in order to avoid identifying an employee for progressive disciplinary action. Examples of acceptable reasons for absence:

1. Personal illness substantiated by a doctor's statement or other evidence acceptable to the Company.

2. Doctor or dental appointment documented by a doctor's statement. However, this necessity can be avoided if the employee will make every effort to schedule his appointments, other than emergency, during non-working hours.

3. Death in the family - proof.

4. Paternity - doctor's statement.

5. Court appearances - proof from Clerk of Court.

6. Emergency beyond employee's control - reasonable proof.

All employees who are considered to have attendance problems will be notified through use of the proper personnel form.

Progressive Discipline for Unexcused Absences.

(a) Five unexcused absences within twelve months: a written warning.

(b) Six unexcused absences in a twelve month period: three day disciplinary suspension.

(c) Seven unexcused absences within a twelve month period: discharge.

Any unreported absence must be considered unexcused unless an acceptable explanation is provided to the supervisor. Disciplinary suspensions for absenteeism will be treated as unexcused absences up to a maximum of two days.

The policy for seniority employees who do not have attendance problems will continue to be the same. Any excused absence on the part of these employees should not go unattended. In each case, the supervisor should discuss these absences with the employee.

TARDINESS

The parties agree that any employee who is tardy three times in any calendar quarter will receive a written warning. Should the employee be tardy three times in a subsequent quarter during the same twelve calendar months, he shall receive a one day disciplinary suspension or a second written warning at the discretion of the employer. In the event the employee is tardy three times in a third quarter during a twelve month calendar period, the employee shall receive a three day disciplinary suspension or a third written warning at discretion of the employer. Should the employee be tardy three times in a fourth quarter during a twelve month calendar period, or be tardy a total of twelve times during a twelve month period, the employee shall be discharged. The Company and the Union agree that the tardiness in the amount of five minutes or less will not be used for disciplinary purposes nor will the Company dock the employee for such tardiness. However, this privilege is only effective three times per calendar month, commencing with the effective date of the current agreement, and it is not cumulative in nature nor may a carryover affect be used.

SAFETY AND HEALTH

The Company will make reasonable provisions for the safety and health of its employees during their hours of employment.

Management retains the exclusive right to determine the means by which safety hazards are to be corrected but agrees first to consult with the union concerning all matters of safety and health, including right to add or delete from the

16

list of mandatory safety rules. The union stipulates and agrees that employees have the obligation to abide by, and assist in the enforcement of all rules regarding health and safety and the failure to do so may result in discipline.

---

## ARTICLE XXXIV

## RULES OF CONDUCT

We all recognize that some rules are necessary in any business, for your good and the good of your fellow employees. In order for any organization to function properly, everyone must exercise reasonable conduct.

Our rules of conduct call for each of us to use common sense and judgement, and in general, to be a good citizen. When work rules are offended, you will be advised by your supervisor to help you avoid violations in the future.

Serious actions cause immediate suspension or even discharge. In view of this severity, we feel that these should be listed so that you clearly understand them. It is emphasized that a prior violation does not necessarily have to involve the same rule. For example, the first violation of Rule 4 prohibiting smoking in an unauthorized place can result in discharge if there has been a prior reprimand and a three day suspension or written warning used in lieu of a suspension for violation of Rule 4 or any other of the stated rules.

All disciplinary suspension provisions are subject to the use of a written warning in lieu of suspension at the discretion of the employer. It is further agreed that should 12 calendar months elapse without any disciplinary action being taken, the most recent disciplinary action shall be removed from the file. Should additional 6-month intervals take place without intervening disciplinary action being taken thereafter, any existing successive file documentation regarding disciplinary action shall also be removed from the file. Once removed from the file, such disciplinary action may not thereafter be used as a step in the disciplinary procedure but may be presented to an arbitrator to be given such weight as he or she deems appropriate.

This is not a complete list of misdemeanors, activities, and practices which may subject an employee to discipline. Other activities which adversely affect the welfare of other employees or the Company will be dealt with by the Company according to the seriousness of the offense, in relation to the foregoing list.

### Rules of Conduct

1.      Employees not in their assigned places and ready for work at their designated starting time, or at the end of rest periods without good cause.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Reprimand |
| 3rd Violation | -- | Three Day Suspension |
| 4th Violation | -- | One Week Suspension |

2.      Reporting for work while under the influence of alcohol or drugs or while suffering from their effects, as provided under the drug testing provisions herein.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Discharge |

3.      Consumption or possession of liquor or any acholic beverages or drugs on Company property, or anytime during your shift including lunch period; even if lunch is off Company property.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Discharge |

17

4.      Smoking in unauthorized areas.

1st Violation     --     Reprimand
2nd Violation     --     Three Day Suspension
3rd Violation     --     Discharge

5.      Gambling, provided it is universally enforced throughout the Company.

1st Violation     --     One Day Suspension
2nd Violation     --     Discharge

6.      Traveling or visiting areas of the building other than where assigned unless in the line of duty or with the permission of the supervisor.

1st Violation     --     Reprimand
2nd Violation     --     One Day Suspension
3rd Violation     --     Three Day Suspension
4th Violation     --     Discharge

7.      Solicitation of any kind, distribution or circulation of literature, petitions and written or printed matter of any description on the Company premises without consent of the Company.

1st Violation     --     Reprimand
2nd Violation     --     Three Day Suspension
3rd Violation     --     Discharge

8.      An employee punching a time card other than his own shall be considered to be performing a dishonest act.

1st Violation     --     Discharge

9.      Wasting time loitering in the rest rooms or any other place on Company property.

1st Violation     --     Reprimand
2nd Violation     --     Reprimand
3rd Violation     --     Three Day Suspension
4th Violation     --     Discharge

10.     Sleeping during working hours.

1st Violation     --     Three Day Suspension
2nd Violation     --     Discharge

11.     Unauthorized use of the telephone facilities or any equipment of the Company.

1st Violation     --     Reprimand
2nd Violation     --     Reprimand
3rd Violation     --     Three Day Suspension
4th Violation     --     Discharge

18

12.    Threatening, or intimidating other employees on the premises at anytime. This includes fighting inside the warehouse or on Company property, unless retreat is not possible and the individual was acting in self defense.

1st Violation    --    Discharge

13.    Threatening, intimidating, interfering with or striking a supervisor, management official of the Company or an authorized visitor to the premises.

1st Violation    --    Discharge

14.    Falsification of any statement on the application for employment is considered dishonesty.

1st Violation    --    Discharge

15.    Excess percentage of spoilage or damaged work caused by proven negligence or incompetency.

1st Violation    --    Reprimand
2nd Violation    --    Three Day Suspension
3rd Violation    --    One Week Suspension
4th Violation    --    Discharge

16.    Recklessness or carelessness resulting in serious accident or destruction of Company property, material, tools or equipment.

1st Violation    --    One Week Suspension
2nd Violation    --    Discharge

17.    Failure or refusal to follow the directions given by supervisors or delegated instructors.

1st Violation    --    Reprimand
2nd Violation    --    Three Day Suspension
3rd Violation    --    Discharge

18.    Deliberate falsification of work records is considered dishonesty.

1st Violation    --    Discharge

19.    Failure to notify the Company of absence within one hour after his starting time, unless extreme circumstances acceptable to the Company prove it impossible.

1st Violation    --    Reprimand
2nd Violation    --    Reprimand
3rd Violation    --    Reprimand
4th Violation    --    Reprimand

20.    Absent for three (3) consecutive working days without proper notification will be considered a voluntary resignation.

19

21.    Dishonesty and theft are strictly prohibited.  This includes the destruction or consumption of any Company or customer's products without consent, removal or any Company property from the premises, and the destruction or removal of another employee's property.

|  |  |  |
|---|---|---|
| 1st violation | -- | Discharge |

22.    Discourtesy to customers.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

Employees who receive reprimand will be given a written confirmation of reprimand.  They are required to acknowledge receipt of the written confirmation by signing one copy of the reprimand form.

23.    Leaving plant without permission; except for extreme emergency.

|  |  |  |
|---|---|---|
| 1st Violation | -- | One Day Suspension |
| 2nd Violation | -- | Three Day Suspension |

24.    Use of unauthorized exits for leaving or entering plant.

|  |  |  |
|---|---|---|
| 1st Violation | -- | One Day Suspension |
| 2nd Violation | -- | Three Day Suspension |

25.    Careless workmanship and/or producing excessive scrap.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

26.    Not reporting scrap or faulty work to supervisor.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

27.    Failure to cooperate in good housekeeping

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

28.     Engaging in horseplay of any description

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

29.     Ringing in earlier than 15 minutes before your starting time.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

30.     Willful restriction of production output.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

31.     Failure to wear safety equipment and guards provided.

|  |  |  |
|---|---|---|
| 1st Violation | -- | Reprimand |
| 2nd Violation | -- | Three Day Suspension |
| 3rd Violation | -- | Discharge |

32.     Alcohol and substance abuse testing.  The purpose of the policy statement is to ensure that all employees are capable of performing their assigned duties safely and without influencing or endangering the safety of others.

Paragraph 1.     For the purposes of the policy statement, the phrase "Prohibited Substances" shall mean and include any illegal drugs, controlled substances (other than prescribed medications taken pursuant to and in accordance with, the doctor's order), look like drugs, designer drugs and alcohol beverages.

Paragraph 2.     If an employee is suspected, for example, through behavioral observation, unsafe work practice, injury and/or detection of odor common to being under the influence of a Prohibited Substance.

(a)     The employee will be interviewed by Management, or a representative thereof, and asked to submit to a substance abuse test and sign a release of information to the Company to determine the validity of the allegation. Refusal to submit to the test or sign the release will constitute a presumption of substance abuse and will constitute the basis for immediate termination without receipt of any prior warnings.

(b)     The Company will arrange for transportation to the testing location.  A positive test showing levels in excess of the following amounts will result in immediate termination:

|  | Initial Test Level | Confirmatory Test Level |
|---|---|---|
| Marijuana Metabolite | 100 ng/ml | 15 ng/ml |
| Cocaine Metabolite (s) | 300 ng/ml | 150 ng/ml |
| Opiate Metabolites | | |
| Morphine | | |

21

| | | |
|---|---|---|
| Codeine | | |
| Amphetamines | 1000 ng/ml | 500 ng/ml |
| Amphetamine | | |
| Hethamphetamine | | |
| Phencyclidine (PCP) | 25 ng/ml | 25ng/ml |
| Alcohol | State legal limit | |

Upon successfully completing graduation from an accredited alcohol or drug rehabilitation facility up to ninety (90) days of the initial test, the employee will be reinstated to his/her prior position or an equivalent one.

(c)     Any employee who has been reinstated will be required to submit to future drug screening at random to insure continued policy compliance for 24 months from date of reinstatement. Second violation will result in automatic termination and ineligibility for rehire.

Paragraph 3.     Reasonable cause for testing shall also include, but not be limited to, the following:

(a)     Involvement in a serious on-the-job accident or injury requiring off-site medical attention;

(b)     Appearing at work with visible signs of impairment;

(c)     Off-duty involvement in the sale, purchase, dispensation, distribution, possession, consumption, or use of a prohibited substance, that is covered in a police report.

Paragraph 4.     An employee who is involved in the sale, purchase, dispensation, distribution, possession, consumption or use of a Prohibited Substance at any time on Company property shall be subject to termination.

Paragraph 5.     Employees' clothing and personal belongings, lockers and vehicles parked on company property are subject to search without prior notice. Refusal to submit to such search shall also be grounds for immediate termination.

Paragraph 6.     A confirmed positive test result from a NIDA approved laboratory shall be presumed to be a correct test result and shall not be repeated unless proven to be incorrect beyond a reasonable doubt.


ARTICLE XXXV

UNION INSPECTION

Authorized representatives of the Union shall have access to the Employer's establishment at all reasonable times for the purpose of adjusting disputes, investigating working conditions and ascertaining compliance with this Agreement.


22

ARTICLE XXXVI

SAFETY SHOES

Each employee, that is through probation, will be eligible for a allowance of $1.45 weekly, each contract year. The allowance is paid toward the purchase of safety shoes.

ARTICLE XXXVII

CONTRACT DURATION

THIS AGREEMENT and/or AMENDMENT shall go into effect on APRIL 1, 2007 and continue in full force and effect until MARCH 31, 2010 shall continue thereafter from year to year unless written notice is given by either party hereto at least sixty (60) days prior to APRIL 1, 2010 thereafter.

IN WITNESS WHEREOF, the parties hereto affix their hands and seal this _____ day of _____, 2007.

SIGNED FOR THE EMPLOYER:

    SUNNYSIDE CORPORATION

    225 CARPENTER AVENUE

    WHEELING, ILLINOIS 60090

_____

SIGNED FOR THE UNION

MISCELLANEOUS WAREHOUSEMEN, AIRLINE, AUTOMOTIVE PARTS, SERVICE, TIRE AND RENTAL, CHEMICAL AND PETROLEUM, ICE, PAPER AND RELATED CLERICAL AND PRODUCTION EMPLOYEES UNION, LOCAL NO. 781, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

_____

RICHARD A. SMITH, PRESIDENT

_____

DALE C. FIJALKOWSKI, BUSINESS REPRESENTATIVE

_____

STEWARD

23

APPENDIX "A"

JOB CLASSIFICATION

WORKING FOREMAN

Performs working job functions throughout the entire range of job classifications and supervises the entire range of job classifications.

MAINTENANCE

Performs maintenance functions as assigned and works in any job classification required.  Qualifications include, but are not limited to: Knowledge of all phases of electric welding, packaging machinery operation and repair, hydraulics, pump operation and repair, plumbing, lift truck repair (gas and electric), knowledge of necessary tools and safety handling of same.  Must have extensive knowledge of two of the above categories and have three years of job experience or equivalent in the maintenance area.

INDUSTRIAL PROCESSOR:

The functions including, but are not limited to: Bulk receiving, blending all solvents and oils, and industrial related packaging.

GENERAL FACTORY

Performs job functions including, but not limited to: Packaging machinery operation, stocking warehouse, loading and feeding lines with raw materials, receiving new raw materials (except bulk) loading all trucks when necessary.

24

**EXHIBIT B**

LAW OFFICES

# ASHER, GITTLER, GREENFIELD & D'ALBA, LTD.

SUITE 1900
200 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60606

TELEPHONE (312) 263-1500
FACSIMILE (312) 263-1520
E-MAIL    *firm@ulaw.com*



November 12, 2007

*By Messenger*

Thurston C. Bailey
Schiff Hardin, LLP
6600 Sears Tower
Chicago, IL 60606

      Re: Sunnyside Corp.

Dear Mr. Bailey:

      This is in response to your letter of November 9, 2007, requesting certain information from the Welfare Fund. As you have already received a copy of the most current summary plan description of the Welfare Fund, the only other document that satisfies your response is the Plan Agreement, which is enclosed. There is no participation agreement in effect between the parties as the Collective Bargaining Agreement binds the signatory Employer to the Plan Agreement.

      Please contact me if you have any questions.

Sincerely

Librado Arreola

cc:    Richard Smith
       Robert Bernstein
       Anthony DiGrazia

## RESTATED AGREEMENT AND DECLARATION OF TRUST

## ESTABLISHING THE

## MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781

## HEALTH AND WELFARE FUND

THIS RESTATED AGREEMENT AND DECLARATION OF TRUST, approved and adopted as of the _5-TH_ day of _JUNE_ , 1996,

### WITNESSETH:

WHEREAS, an Agreement and Declaration of Trust was made and entered into as of the 1st day of July, 1960, by and between MISCELLANEOUS WAREHOUSEMEN'S UNION, LOCAL 781 (hereinafter, "Union"), affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN and HELPERS OF AMERICA, and the NEGOTIATING COMMITTEE of the MERCHANDISE WAREHOUSEMEN INDUSTRY OF CHICAGO (hereinafter, "Negotiating Committee"), creating the MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781 HEALTH AND WELFARE FUND ("Fund"); and

WHEREAS, an Amended Agreement and Declaration of Trust was made and entered into as of the 1st day of May, 1971, by and between the Union and the Negotiating Committee, which Amended Agreement and Declaration of Trust has been thereafter amended from time to time; and

WHEREAS, Section 7.01(a) of Article VII of the Amended Agreement and Declaration of Trust creating the Fund provides that it may be amended by the unanimous written concurrence of the Trustees; and

WHEREAS, the Trustees desire to restate the Amended Agreement and Declaration of Trust in its entirety;

NOW, THEREFORE, by this written agreement unanimously concurred in by the Trustees, the parties hereto do hereby adopt this Restated Agreement and Declaration of Trust Creating the MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781 HEALTH AND WELFARE FUND, to read as follows, effective on the day first above written:

781HW/050196/RTA

1.04 The term "Trustee" shall mean the Trustees designated in this Restated Agreement and Declaration of Trust, together with their successors designated and appointed in accordance with the terms hereof.

1.05 The term "Employer Trustee" shall mean Trustees and their successors representing Employers.

1.06 The term "Union Trustee" shall mean Trustees and their successors appointed by the Union and representing the Employees.

1.07 The term "Trust" shall mean the MISCELLANEOUS WAREHOUSEMEN'S UNION, LOCAL 781 HEALTH AND WELFARE FUND, created by an Agreement and Declaration of Trust dated July 1, 1960, and existing under this Restated Agreement and Declaration of Trust and any subsequent amendments hereto.

1.08 The terms "Trust Fund" or "Fund" shall refer to all property of whatever nature which shall be in said Trust.

1.09 The term "Contributions" or "Employer Contributions" shall mean payments made by Employers or the Union to the Trust on behalf of Employees.

1.10 The terms "Plan of Benefits", "Benefit Plan" or "Plan" shall mean any benefits which may be provided from time to time by the Trust.

1.11 The term "policy" or "policies" as used herein shall mean the policy or policies of insurance issued pursuant to the Agreement and Declaration of Trust, the Amended Agreement and Declaration of Trust, or this Restated Agreement and Declaration of Trust and accepted by the Trustees as part of the Fund, and all other policies of insurance accepted by the Trustees as part of such Fund. They shall be deemed to include any amendments or riders attached to such policy or policies.

1.12 The term "Collective Bargaining Agreement" shall mean any applicable Collective Bargaining Agreement now existing between an Employer and the Union which provides for Contributions to this Trust, as well as any extensions, amendments or renewals thereof, or any new Collective Bargaining Agreement executed in the future between the Union and an Employer which provides for the payment of Contributions to this Trust, as well as any extensions, amendments or renewals thereof.

2.04 Successor Union Trustees shall be designated by the Union.

2.05 Successor Employer Trustees shall be designated by the remaining Employer Trustees. If there shall be no remaining Employer Trustee, then Successor Employer Trustees shall be appointed by a written instrument signed by a majority of the Employers then obligated to contribute to the Trust.

2.06 A Union Trustee may be removed at any time by the Union.

2.07 An Employer Trustee may be removed at any time by the unanimous concurrence of the remaining Employer Trustees, or by a written instrument signed by a majority of the Employers then obligated to contribute to the Trust.

2.08 Any Trustee shall have the right to resign upon tendering ten days' written notice to the remaining Trustees, which resignation shall take effect on the tenth day following the date of mailing of said notice to each of the remaining Trustees, or the date that a Successor Trustee shall have been appointed in accordance herewith, whichever is earlier.

2.09 The Union shall have no voice in the selection, election, designation or removal or in the method of selection, election, designation or removal of any Employer Trustee, notwithstanding that the Union may be making Employer Contributions to the Trust.

2.10 A Trustee shall be deemed to have consented to act as Trustee under this Restated Agreement and Declaration of Trust and to have agreed to administer the Trust as herein provided by becoming signatory hereto, or in the case of a Successor Trustee, by filing a written acceptance of Trust with the remaining Trustees.

2.11 To the extent permitted by law, no Trustee shall be liable or responsible for any acts or defaults of any co-Trustee or predecessor Trustee, or for any losses or expenses resulting from or occasioned by anything done or neglected to be done in the administration of the Trust prior to his becoming a Trustee or subsequent to his having ceased to be a Trustee, nor shall any Trustee be required to inquire into or take any notice of the prior administration of the Trust.

2.12 In the event a deadlock develops between the Employer Trustees and the Union Trustees with respect to any matter over which the Board of Trustees has jurisdiction, but excluding a deadlock regarding a proposed amendment to this Restated Agreement and Declaration of Trust, the Trustees shall appoint a neutral party empowered to break such deadlock within a

781HW/050196/RTA

# ARTICLE III

## Powers and Duties of Trustees

3.01 The Trustees shall have general supervision of the operation of the Trust and shall conduct the business and activities of the Trust according to this Restated Agreement and Declaration of Trust.

3.02 The Trustees shall hold, manage and take commercially reasonable measures to care for and protect the Trust Fund and collect the income therefrom and Contributions thereto, and shall have all powers with respect thereto which they deem necessary or desirable to carry out the purposes of the Trust.

3.03 The Trustees shall have the power, in their sole discretion, to invest and reinvest the principal and income of the Trust Fund in such securities, common and preferred stock, mortgages, notes, real estate or other property which shall be permissible investments for Trustees in accordance with ERISA, and may sell or otherwise dispose of such securities or property at any time and from time to time as they so see fit; provided, however, the Trustees may, in their sole discretion, invest the Trust Fund or any part thereof in group contracts, and such other form of contracts provided all such contracts are issued by insurance companies authorized to do business in the State of Illinois, as may be selected by the Trustees, for the purpose of providing for all or a part of the benefits provided under this Trust.  The Trustees shall have power (in addition to and not in limitation of common law and statutory authority) to exercise with respect to any stocks, bonds, or other property, real or personal, held by them as Trustees, all such rights, powers and privileges as might be lawfully exercised by any person owning similar stocks, bonds or other property in his own right.

3.04 The Trustees may employ or contract with an individual or firm to act as Fund Manager.  The Manager will administer the day to day business operations of the Fund and may receive Employer Contributions, deposit the same in the designated depositories, make disbursements from the Trust Fund under the direction of the Trustees, maintain all books and records of the Trust and perform all other functions necessary or appropriate to the operation of the Trust.

3.05 All Trust funds not invested shall be deposited by the Trustees in such depository or depositories as the Trustees shall from time to time designate, and any such deposit or deposits shall be made in the name of the

fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

3.11 To the extent permitted by law, no Trustee shall be liable for any action taken or omitted to be taken by him in good faith, nor for the wrongful acts of any agent, independent contractor, employee or attorney selected by the Trustees with reasonable care, nor for any act of commission or omission of any other Trustee. The fact that such action or omission was advised by counsel employed by the Trustees shall be conclusive evidence of such good faith and care.

3.12 The Trustees are hereby authorized to formulate and promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust, provided the same are not inconsistent with the terms of this Restated Agreement and Declaration of Trust. All rules and regulations adopted by majority action of the Trustees for the administration of the Trust Fund shall be binding upon all parties hereto, all persons dealing with the Trust and all persons claiming any benefits hereunder.

3.13 Any Successor Trustee appointed in accordance with the provisions of this Restated Agreement and Declaration of Trust, upon accepting in writing the terms of this Trust, shall be vested with all of the rights, powers and duties of his predecessor.

3.14 No party dealing with the Trustees shall be obliged (a) to see to the application to the Trust purposes, herein stated, of any money or property belonging to the Trust Fund, or (b) to see that the terms of this Restated Agreement and Declaration of Trust have been complied with, or (c) to inquire into the necessity or expediency of any act of the Trustees. Every instrument executed by a majority of the Trustees shall be conclusive evidence in favor of every person relying thereon (a) that at the time of the delivery of said instrument the Trust was in full force and effect, (b) that the instrument was executed in accordance with the terms and conditions of this Restated Agreement and Declaration of Trust, and (c) that the Trustees were duly authorized and empowered to execute the instrument.

3.15 To the extent permitted by law, the Trustees may receive compensation for the performance of their duties as such Trustees, and they shall be reimbursed by the Trust for all reasonable and necessary expenses which they may incur in the performance of their duties. Any Trustee serving in any other capacity rendering service to the Fund may be paid a reasonable fee for his services.

3.18 The Trustees may pay or provide for (1) the payment of all reasonable and necessary expenses of collecting the contributions and administering the affairs of this Trust, including the employment of such administrative, legal, expert and clerical assistance as may be reasonably necessary, (2) the leasing of such premises as may be necessary for the administration of this Trust, and (3) the purchase or leasing of such materials, supplies and equipment as the Trustees, in their discretion, find necessary or appropriate to the performance of their duties.

3.19 The Trustees, by majority action, shall have the power to construe the provisions of this Restated Agreement and Declaration of Trust and the terms and conditions of any Plan of Benefits adopted by them; and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Employers, all parties dealing with the Trust, and all persons claiming any benefits from the Trust.

3.20 The Trustees, by resolution, shall provide for fidelity bonds, in such form and amounts as may be required by statute, for employees of the Trust and for the Trustees who shall be authorized to handle assets of the Trust Fund. If no such statutory requirement shall exist, such bonds shall be in such form and amounts as the Trustees may determine. In addition, the Trust may by resolution purchase insurance for its fiduciaries and for itself to cover liabilities or losses occurring by reason of the act or omission of a fiduciary; provided, however, that such insurance policy shall be in the form and manner permitted by law.

3.21 The Trustees shall be entitled at any time to have a judicial settlement of their accounts and judicial determination of any questions in connection with their duties and obligations under this Trust, or in connection with the administration or distribution thereof. Any Trustee who has resigned or been removed from office shall and hereby agrees to forthwith execute all instruments necessary to effectuate the transfer of Trust funds.

3.22 The Trustees are authorized to extend the coverage of this Restated Agreement and Declaration of Trust to such other Employers as the Trustees shall agree upon, provided such Employers are required and agree to conform to the terms and conditions hereof and to make Employer Contributions pursuant to a Collective Bargaining Agreement with the Union.

3.23 The Trustees are authorized to negotiate, direct and agree to the merger of this Trust with or into another welfare trust, or the merger of another trust into this Trust, on such terms and conditions as are consistent with the purposes stated herein for this Trust.

781HW/050196/RTA

(e)   To serve or permit any person or group of persons to serve in more than one fiduciary capacity.

(f)   To enter into any and all contracts and agreements for carrying out the terms of this Restated Agreement and Declaration of Trust and for the administration of the Trust, and to do all acts that they, in their sole discretion, may deem necessary or advisable, and such contracts, agreements and acts shall be binding and conclusive on the parties hereto, on all persons dealing with the Trust, on all Employees or beneficiaries and on all persons claiming any benefits from the Trust.

(g)   To keep property and securities registered in the name of the Trustees or in the name of a nominee or nominees or in unregistered or bearer form without disclosure of any fiduciary relationship.

(h)   To establish and accumulate, as part of the Trust Fund, a reserve or reserves adequate, in the sole opinion of the Trustees, to carry out the purposes of such Trust.

(I)   To pay out of the Trust all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust, or any money, property or securities forming a part thereof.

(j)   To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper to carry out the purposes of the Trust or for the protection of the property held hereunder.

(k)   To pay out of the funds of the Trust membership fees in organizations formed for the purpose of educating Trustees and Administrators to perform their duties and to fulfill their obligations to jointly administered trusts, and to pay reasonable expenses incurred in connection with the attendance by the Trustees and Trust employees at educational conferences and seminars.

(l)   To enter into reciprocal agreements with any other trust or trusts providing for the granting of benefits similar to those provided by this Trust based, in part, upon employment by employers who made contributions on behalf of employees to such other trust or trusts.

781HW/050196/RTA

**Page 13 of 24**

## ARTICLE IV

## Operation of the Board of Trustees

4.01 The Trustees shall select, by majority vote, a Chairman who shall serve until replaced by the Trustees.  The Chairman will preside at meetings of the Board.

4.02 A quorum of the Trustees for the transaction of business, except as otherwise provided herein, shall consist of four Trustees, including at least one Employer Trustee and at least one Union Trustee.  The Trustees may also participate in any act at any meeting of the Board of Trustees through the use of a conference telephone or other communication equipment by means of which all persons participating in the meeting can hear each other.   Participation in a meeting in such manner shall constitute attendance and presence in person at the meeting of the person or persons so participating.

4.021 All decisions of the Trustees shall be by majority vote.  At all meetings of the Trustees, the Union Trustees present shall have, in the aggregate, a total of one vote and the Employer Trustees present shall have, in the aggregate, a total of one vote.

4.03 No vacancy or vacancies in the Board of Trustees shall impair the power of the remaining Trustees, acting in the manner provided in this Restated Agreement and Declaration of Trust, to administer the affairs of the Trust notwithstanding the existence of such vacancy or vacancies.

4.04 To the fullest extent permitted by law, all proper and necessary expenses incurred by any Trustee including, without limitation, the full cost of defense in any litigation arising out of the Trusteeship of this Fund, shall be paid out of the Trust Fund.

4.05 Any instrument in writing, authorized by the Trustees, may be signed by any two Trustees, provided it is signed by one Employer Trustee, one Union Trustee.  Any instrument so executed shall have the same force and effect as if taken by all of the Trustees.  All parties dealing with the Trustees may rely on any instrument so executed and on any action so taken as having been duly authorized.

4.06 A regular meeting of the Board shall be held not less than once a year, which date is to be fixed by the Chairman.  The Chairman or any two Trustees may call a special meeting of the Trustees at any time by giving not

# ARTICLE V

## Controversies and Disputes

5.01 In any controversy, claim, demand, suit at law or other proceeding between the Trustees and any Employer, Employee, beneficiary or any other person claiming any benefits from the Trust, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trust, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any facts which are of public record and any other evidence pertinent to the issue involved.

5.02 All questions or controversies of whatsoever character arising in any manner or between any parties or persons in connection with the Trust or the operation thereof, whether as to any claim for benefits, or whether as to the construction of the language of this instrument, the Plan of Benefits, or the rules and regulations adopted by the Trustees, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust or otherwise, shall be submitted to the Trustees or, where Trustee responsibility has been delegated to others, to such others for decision, and the decision of a majority of the Trustees or, where appropriate, their delegates, shall be binding upon all persons dealing with the Trust or claiming any benefit thereunder, except to the extent that such decision may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matter.

5.03 The Trustees may, in their sole discretion, compromise or settle any claim or controversy in such manner as they think in the best interests of the Trust and its beneficiaries, and any decision made by the Board of Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties to the Trust, all persons dealing with the Trust, and all persons claiming any benefits thereunder.

6.04 In no event shall the Employers, directly or indirectly, receive any refund of Contributions made by them to the Trust, except in case of a bona fide mistake, and in case of such bona fide mistake, only to the extent permitted by law, nor shall any Employer participate in the disposition of the Trust Fund or receive any benefits from the Trust. Except as otherwise required by law, no Employer shall be liable for any payments to the Trust Fund other than for Contributions due pursuant to a Collective Bargaining Agreement and other payments required under the terms of this Trust Agreement. Upon the transfer to the Trustees of such Contributions and other payments, all responsibilities of the Employers for Contributions shall cease, and neither the Employers nor the Union shall have any responsibility for the acts of the Trustees. No person shall have any individual right, title, interest or claim against any Employer Contribution or the Trust Fund, except as may be expressly provided for in this Restated Agreement and Declaration of Trust.

6.05 Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their Social Security numbers, the hours worked by each employee, the date of termination of employment of each employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust. All Employers shall furnish to the Trustees, annually or more frequently if requested by them, a statement showing whether (a) the company is a corporation and the names of all its officers; (b) if not a corporation, a certificate stating that it is either a partnership or an individual proprietorship or other legal entity and the names of the partners, owners, trustees or the name of the individual proprietor. The Union will comply with any reasonable request of the Trustees to examine those Union records which may indicate the employment record of any employee whose status is in dispute.

## ARTICLE VIII

### Termination of Trust

8.01 This Trust shall terminate upon the happening of any one or more of the following events:

(a)    In the event the obligation of all Employers contributing to the Trust to make Contributions shall terminate.

(b)    Upon the disbursement of the entire Trust Fund, as hereinafter provided.

(c)    In the event the Trust hereby created is subject to the Rule against Perpetuities as existing in the law of the State of Illinois at the time in this Article fixed for termination of the Trust, the Trust shall terminate twenty years after the date of death of the last Employee covered by this Restated Agreement and Declaration of Trust at the time of the execution of this Restated Agreement and Declaration of Trust; otherwise, this Trust shall have perpetual existence except as otherwise provided in this Article.

(d)    By operation of law.

(e)    Upon the written concurrence of the Union and by a written instrument signed by a majority of the Employers then obligated to contribute to the Trust.

8.02 In the event this Trust shall terminate for any reason, the Trustees shall first apply the Fund to pay any and all obligations of the Trust. Any funds thereafter remaining shall be used at the discretion of the Trustees to provide benefits for Employees covered at the time of termination of this Agreement consistent with the purposes of this Trust as herein provided. The Trustees shall have discretion under this provision to transfer any remaining funds to a trust fund providing health and welfare benefits to employees who were covered under this Fund during the year prior to termination of this Trust. In no event shall the surplus, if any, remaining be distributed to the Employers.

781HW/050196/RTA

Security taxes or other Federal withholding tax, and that such Contributions do not constitute a portion of the "regular rate" under the Fair Labor Standards Act. All parties hereto agree to make such lawful amendments to this Restated Agreement and Declaration of Trust as may be necessary to carry out this intention.

9.05 In the event any question or dispute shall arise concerning the proper person or persons to whom any payment shall be made hereunder, the Trustees may withhold such payment until a binding adjudication of such question or dispute, satisfactory to the Trustees in their sole discretion, shall have been made, or the Trustees shall have been adequately indemnified to their satisfaction against loss.

9.06 This Restated Agreement and Declaration of Trust shall be construed according to and be governed by the laws of the State of Illinois, except as may be provided by federal law.

9.07 Where used in this Restated Agreement and Declaration of Trust, words in the masculine shall be read and construed as in the feminine, and words in the singular shall be read and construed as though used in the plural, and vice versa, in all cases where such construction would so apply.

9.08 The Article titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Restated Agreement and Declaration of Trust or be construed as part hereof.

9.09 Should any provision of this Restated Agreement and Declaration of Trust be held to be unlawful, or unlawful as to any person or instance, such fact shall not adversely affect the other provisions herein contained or the application of said provisions to any other person or instance, unless such illegality shall make impossible the functioning of the Trust.  No Trustee shall be held liable for any act done or performed in pursuance of any provisions hereof prior to the time such act or provision shall be held
unlawful by a court of competent jurisdiction.

9.10 No person shall have any vested interest or right in the Trust Fund or in any payments from the Trust except as may be provided in any Plan of Benefits adopted by the Trustees from time to time; provided, however, that the rights of any person who has become eligible for benefits hereunder by fully meeting the requirements of this Restated Agreement and Declaration of Trust and any Plan of Benefits created hereunder shall not be affected, changed, or altered by any amendment hereto, unless the Trust Fund, in the opinion of the Trustees, is inadequate to meet the payments due, in which event the Trustees shall determine whether such benefits shall be reduced uniformly or the Trust terminated.

AMENDMENT NO. 1
TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
ESTABLISHING THE
MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781
HEALTH AND WELFARE FUND

Pursuant to the authority granted to them in Article VII, Section 7.01(a) of the Restated Agreement and Declaration of Trust Establishing the Miscellaneous Warehousemen's Local 781 Health and Welfare Fund, the Board of Trustees amend the Restated Agreement and Declaration of Trust, effective July 1, 2000, as follows:

1.  Article II, Section 2.02 shall be amended to read as follows:

    The Board of Trustees of this Trust shall consist of four natural persons, two of whom shall represent the Employees and two of whom shall represent the Employers, and shall be "Named Fiduciaries" within the meaning of Section 402(a)(2) of the Employee Retirement Income Security Act of 1974, as the same may be amended from time to time (hereinafter referred to as "ERISA").

2.  Article II, Section 2.021 shall be amended to read as follows:

    The Union Trustees shall be JOSEPH L. BERNSTEIN and ROBERT BERNSTEIN, appointed by the Union, or their successors appointed as hereinafter provided.

3.  Article II, Section 2.022 shall be amended to read as follows:

    The Employer Trustees shall be EARL ABRAMSON and GEORGE J. CIBULA, JR., or their successors appointed as hereinafter provided.

4.  Article II, Section 2.05 shall be amended to read as follows:

    Successor Employer Trustees shall be designated by the remaining Employer Trustee. If there is no remaining Employer Trustee, then Successor Employer Trustees shall be appointed by a written instrument signed by a majority of the Employers then obligated to contribute to the Trust.

# AMENDMENT NO. 2
## TO THE
### RESTATED AGREEMENT AND DECLARATION OF TRUST
### ESTABLISHING THE
### MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781
### HEALTH AND WELFARE FUND

Pursuant to the authority granted to them in Article VII, Section 7.01(a) of the Restated Agreement and Declaration of Trust Establishing the Miscellaneous Warehousemen's Local 781 Health and Welfare Fund, the Board of Trustees amend the Restated Agreement and Declaration of Trust, effective January 1, 2006, as follows:

Article I, Section 1.03(c) is amended to read as follows:

All persons employed by the Trust, upon acceptance by the Trustees; and as to such Trust personnel, the Trust shall be deemed an Employer within the meaning of this Restated Agreement and Declaration of Trust.

This Amendment No. 2 may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same Amendment No. 2.

The undersigned have executed this Amendment No. 2 to the Restated Agreement on the date written opposite their respective names.

UNION TRUSTEES                                    EMPLOYER TRUSTEES

_____ 11Jan06                  _____ 1/11/06
                         Date                                            Date

_____ 1/11/06                  _____ 1/11/06
Anthony R. DiGrazia      Date                                            Date

-1-

**EXHIBIT C**

**Miscellaneous Warehousemen's Local 781, I. B. of T.**
Health and Welfare Fund
200 E. Howard, Suite 216
Des Plaines, Illinois 60018-5907
Telephone: 847-298-9999
Facsimile: 847-824-0781

## BOARD OF TRUSTEES

*Union Trustees*
Anthony R. DiGrazia
Richard A. Smith

*Employer Trustees*
Earl Abramson
James Perlow

## CLAIMS ADMINISTRATOR
Group Administrators, Ltd.

## FUND AUDITOR
Reicin, Pollack & Co., Ltd.

## FUND COUNSEL
Asher, Gittler, Greenfield & D'Alba, Ltd.

## FUND CONSULTANT
The Segal Company

---

### IMPORTANT

Only the full Board of Trustees is authorized to interpret the Plan described in this booklet. No employer, union or any representative of any employer or union, is authorized to interpret the Plan nor can any such person act as an agent of the Trustees. You may only rely on information regarding the Plan that is communicated to you in writing and signed on behalf of the full Board of Trustees either by the Trustees, or, if authorized by the Trustees, signed by the Claims Administrator.

The Trustees reserve the right and have been given the discretion to amend, modify or discontinue all or part of the Plan whenever, in their sole judgment, conditions so warrant.

Miscellaneous Warehousemen's Local 781, I. B. of T.
Health and Welfare Fund
200 E. Howard, Suite 216
Des Plaines, Illinois 60018-5907
Telephone: 847-298-9999
Facsimile: 847-824-0781

To All Plan Participants:

We are pleased to provide you with this revised Summary Plan Description booklet describing your Plan of Health and Welfare benefits in effect as of January 1, 2006. This booklet includes the changes that have been made to your Plan since the last booklet was printed. Although this booklet is meant to be an easy-to-understand description of your Plan benefits, it also serves as the Plan Document, which is the Plan's official Rules and Regulations.

The booklet describes benefits that are provided under all Schedules of Benefits included under the Plan. *Dental and Vision benefits are described in a separate booklet and they are only provided under the Plan 2A and Plan 5 Schedules of Benefits. Dental and Vision benefits are not provided under the Plan 2 Schedule of Benefits. You should rely on your Schedule of Benefits to determine which benefits are provided to you by your Plan. You may not assume you are covered by a benefit because it is described in this booklet or a separate booklet. You should consult your Schedule of Benefits in the pocket of this booklet for the specific benefits and amount of benefits provided to you by the Plan.*

Read this booklet carefully to see what coverage is available, who is eligible for coverage and when coverage begins and ends. Keep the booklet with your other important papers so you can refer to it when you need it. If you are married, share this booklet with your spouse and let your spouse know where you keep it filed.

If you have questions about the information in this booklet, please contact the Claims Administrator — Group Administrators, Ltd. — at 450 East Remington Road, Schaumburg, Illinois 60173-4540 or by calling 847-519-1880.

Sincerely,
BOARD OF TRUSTEES

---

This booklet contains a summary in English of your Plan rights and benefits under the Miscellaneous Warehousemen's Local 781, I. B. of T. Health and Welfare Fund. If you have difficulty understanding any part of this booklet, contact Group Administrators, Ltd., the Claims Administrator, at 450 East Remington Road, Schaumburg, Illinois 60173-4540 during regular business hours Monday through Friday. You may also call the Claims Administrator's office at 847-519-1880 for assistance.

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1
    Life Events................................................................................................1
    Rules about Plan Interpretation and Continuation............................1
BENEFITS INFORMATION FOR EVENTS IN YOUR LIFE....................3
WHEN YOU BEGIN WORKING.....................................................................7
    How You Become Eligible for Benefits..............................................7
    How Your Dependents Become Eligible for Benefits........................7
    Special Enrollment Rights....................................................................9
    Changes in Eligibility Rules...............................................................9
IF YOU HAVE OR ADOPT A CHILD.........................................................10
    How Your New Child Becomes Eligible for Benefits......................10
    How Long Your Child Remains Eligible for Benefits......................10
    Review Your Designation of Beneficiary.........................................10
IF YOU GET MARRIED..............................................................................11
    How Your Spouse Becomes Eligible for Benefits...........................11
    How Long Your Spouse Remains Eligible for Benefits...................11
    Review Your Designation of Beneficiary.........................................11
IF YOU DIVORCE OR LEGALLY SEPARATE FROM YOUR SPOUSE..12
    How Your Spouse Continues to Be Eligible for Benefits.................12
    Review Your Designation of Beneficiary.........................................12
WHEN YOUR CHILD IS NO LONGER ELIGIBLE FOR BENEFITS.....13
    How Your Dependents Continue to Be Eligible for Benefits..........13
WHEN YOU STOP WORKING....................................................................14
    Family and Medical Leave.................................................................14
    Military Leave......................................................................................14
    Your Retirement...................................................................................15
    Your Termination before Retirement................................................15
    Other Reasons Your Benefits May End.............................................15
    Continuing Healthcare Coverage for Your Spouse and Dependents
    Upon Your Death.................................................................................16
    Continuing Your Healthcare Coverage through COBRA..................16
    Certificate of Creditable Coverage at Termination of Coverage...20
WHEN YOU RETURN TO WORK.............................................................21
    How You Become Eligible for Benefits Again..................................21
    How Your Dependents Become Eligible for Benefits Again............21
HOW COSTS ARE KEPT UNDER CONTROL FOR YOU AND THE PLAN..22
    Pre-Admission Review........................................................................22
    Preferred Provider Organization.......................................................24
    Calendar Year Deductible..................................................................25
    Coinsurance and Limits on Benefits.................................................25
    Out-of-Pocket Expenses.....................................................................25
    Lifetime Maximum..............................................................................26
MEDICAL BENEFITS..................................................................................27
    Covered Medical Expenses................................................................27
    Exclusions and Limitations on Payment of Medical Expenses.....32

    Pre-Existing Condition Provision.....................................................33
SUPPLEMENTARY ACCIDENT CHARGE BENEFIT..............................35
    Benefit Payment...................................................................................35
    Accident Charge..................................................................................35
PRESCRIPTION DRUG BENEFITS............................................................36
    How to Obtain Your Prescriptions....................................................36
    Covered Prescription Drugs...............................................................36
    Exclusions and Limitations on Payment of Prescription Drug
    Benefits..................................................................................................37
GENERAL EXCLUSIONS AND LIMITATIONS ON PLAN COVERAGE..38
IF YOU BECOME DISABLED.....................................................................41
    Extension of Benefits During Disability...........................................41
    Time Loss Weekly Benefit If You Become Totally Disabled.........41
IF YOU OR YOUR DEPENDENT DIES.....................................................42
    Life Insurance Benefit........................................................................42
    Continuing Healthcare Coverage for Your Dependents After Your
    Death.....................................................................................................44
IN THE EVENT OF YOUR ACCIDENTAL DEATH OR DISMEMBERMENT..45
    Dismemberment Benefits....................................................................45
    Exclusions and Limitations on Payment of Accidental Death and
MAKING A CLAIM FOR BENEFITS..........................................................47
    Filing a Claim for Benefits................................................................47
    How the Plan Will Handle Your Claims............................................49
    If Your Claim Is Denied......................................................................52
    How You May Appeal Your Claim.....................................................52
    Coordination of Your Medical Benefits with Coverage Under Other
    Plans......................................................................................................54
    How Your Benefits are Coordinated with Medicare.........................57
    Subrogation and Reimbursement.......................................................59
    Overpayments or Mistaken Payments..............................................62
ADMINISTRATIVE INFORMATION ABOUT THE PLAN.......................62
PRIVACY POLICY.......................................................................................66
    The Plan's Use and Disclosure of Your Protected Health
    Information (PHI)..................................................................................67
YOUR RIGHTS UNDER THE FEDERAL LAW: ERISA............................71

# WHEN YOU BEGIN WORKING

## How You Become Eligible for Benefits

You become eligible for coverage under the Plan if you perform work in covered employment for which contributions are made to the Fund on your behalf. Your eligibility for coverage begins on the first day of the second month for which contributions are required to be made to the Fund on your behalf.

> **Covered Employment** means that you were working for an Employer that was required to contribute to the Fund on your behalf.

You must complete an Enrollment Application, listing the names of your dependents. The Enrollment Application also provides a place for you to list the name of your beneficiary in the event of your death.

Once you are covered, your coverage will continue as long as you continue working and the Fund receives contributions made on your behalf.

## How Your Dependents Become Eligible for Benefits

If you have dependents and you are eligible for benefits under the Plan, then your dependents become eligible for dependent Benefits under the Plan at the same day your coverage begins.

If you do not have a dependent until after you are covered, then coverage will begin for your dependent on the date you acquire the dependent, such as the date you marry, the date your child is born or the date a child is placed with you for adoption. Your dependents' coverage continues as long as you continue working and your employer makes contributions on your behalf. You should complete a revised enrollment card when you add a dependent to your Plan coverage. You must provide the Fund Office with a copy of the birth or marriage certificate or adoption papers.

Your dependents' coverage under other plans will be coordinated with the coverage offered under this Plan. See page 59 for additional information about the coordination of benefits.

> **Coordination of Benefits** If your dependent has coverage under another plan, the benefits of that plan will be coordinated with the benefits of this Plan.

## Your Dependents Defined

Your dependents include:

- Your legal spouse,
- Your natural-born child, legally adopted child or child placed in your home for adoption.

7

# ADMINISTRATIVE INFORMATION
## ABOUT THE PLAN

**Plan Name**
This Plan is called the Miscellaneous Warehousemen's Local 781 Health and Welfare Fund.

**Plan Sponsor and Administrator**
A Board of Trustees is the Plan Sponsor and Plan Administrator and is responsible for the operation of this Plan. The Board of Trustees consists of Employer and Union representatives selected by the Employers and Unions that have entered into Collective Bargaining Agreements related to this Plan. You may contact the Board of Trustees by using the address and phone numbers below.

Board of Trustees
Miscellaneous Warehousemen's Local 781 Health and Welfare Fund
200 E. Howard, Suite 216
Des Plaines, Illinois 60018-5907
Telephone: 847-298-9999
Facsimile: 847-824-0781

**Board of Trustees**
The Trustees of this Plan are:

*Union Trustees*
Anthony R. DiGrazia
Richard A. Smith

*Employer Trustees*
Earl Abramson
James Perlow

The Board of Trustees holds all assets in trust and is responsible for the operation of the Plan. The Board consists of an equal number of employer and union representatives selected by the employers and unions that have made collective bargaining agreements relating to this Plan. You may contact any member of the Board of Trustees at the Fund Office address.

**Collective Bargaining Agreement**
The Plan is maintained through collective bargaining agreements between the Miscellaneous Warehousemen's Local 781 Union and various employer associations and employers. The labor agreements specify the amount of contributions, due date of Employer Contributions, type of work for which contributions are payable and the geographic area covered by these labor agreements.

If you request it in writing, you and your dependents may obtain:

- Information about whether your employer is required to pay contributions to the Plan.
- The address of your particular contributing employer, and
- Copies of the collective bargaining agreement with your employer.

You or your dependents may also examine these documents and information at the Fund Office.

## Plan Identification Numbers

The Plan number assigned to this Plan by the Board of Trustees pursuant to instructions of the Internal Revenue Service is 501.

The identification number assigned to the Board of Trustees by the Internal Revenue Service is 36-6117757.

## Plan Contributions and Funding

Employer Contributions and participants' COBRA self-payments finance the benefits described in this booklet. All Employer Contributions are paid to the Trust Fund pursuant to provisions in the collective bargaining agreements between the Union and Associations and those Employers that are not members of, or represented by, such Associations but that enter into an individual collective bargaining agreement or participation agreement with the Local Union.

Benefits and administrative expenses are paid from the Plan. All Plan benefits are administered by Group Administrators, Ltd.

> **The *Plan year* is a fiscal year. It runs from: July 1 through June 30.**

## Plan Year

The accounting records of the Plan are kept on a Plan Year basis which is the fiscal year beginning each July 1 and ending the following June 30.

## Purpose

This employee welfare benefits plan is maintained for the purpose of providing major medical, prescription drug, dental, vision, weekly time loss benefits, accidental death and dismemberment benefits and life insurance for you and your dependents who meet the eligibility requirements described in this booklet.

## Plan Documents

This edition of your Summary Plan Description/Plan Document replaces any prior Summary Plan Description/Plan Document and other summaries of the provisions of the Plan, but does not replace the official Trust Agreement governing the Plan.

64

The Trustees have to write this summary in clear, understandable and informal language. Other important Plan documents are the Agreement and Declaration of Trust and the collective bargaining agreement.

## Inspection of the Plan

This document and Trust Agreement govern the Plan. If you wish, you may inspect these documents at the Claims Administrator's Office, or you may request copies of documents relating to this Plan. You should contact the Board of Trustees at the address or telephone number listed on page 68 to make your request. You will be charged a reasonable fee to cover the cost of copying any document you request.

## Agent for Service of Legal Process

For disputes arising under the Plan, service of legal process may be made on:

Asher, Gittler, Greenfield & D'Alba, Ltd.
200 West Jackson Boulevard, Suite 1900
Chicago, Illinois 60606
(312) 263-1500

Service may also be made on any member of the Board of Trustees at the Fund Office.

## Plan Amendment or Termination

The Trustees intend to continue the Plan indefinitely for your benefit and the benefit of all the Plan participants. However, the Trustees have been given the power to amend or terminate the Plan, as they deem necessary or under circumstances allowed by ERISA and the terms of the governing Trust Agreement. The Board will make such changes to the Plan by Plan Amendment adopted by majority vote at a meeting of the Board of Trustees. You will be notified of any changes that are made.

> **Your coverage by the Plan is *not a* guarantee of continuing employment.**

## No Employment Guarantee

Your coverage by the Plan does not constitute a guarantee of your continued employment.

65

**EXHIBIT D**

# Grievance Report

**Teamsters Local #781**          **Company: Sunnyside Corp.**
**200 E. Howard Street**
**Ste. 216**
**Des Plaines IL, 60018**
**(847) 298 – 9999**                          **July 27, 2007**

Over the past 3 years, the company has violated the union contract by using non-union workers to perform bargaining unit work. Despite our repeated attempts to resolve this matter, this practice has continued. As a result of this violation, the Union seeks the following relief:

1.    The contract violations to stop, and for the Company to use Union employees to perform bargaining unit work.

2.    The Union seeks to be reimbursed for the Union dues it would have collected had the Company not violated the Contract.

3.    The Union, on behalf of its members seeks to be paid the differential in wages between the rates provided in the contract and the rates actually paid to the non-union workers who performed bargaining work.

4.    The Local 781 Health and Welfare fund seeks to be compensated for all of the premiums it would have received had the employer not violated the contract.

# MISCELLANEOUS WAREHOUSEMEN, AIRLINE, AUTOMOTIVE PARTS, SERVICE, TIRE AND RENTAL, CHEMICAL AND PETROLEUM, ICE, PAPER, AND RELATED CLERICAL AND PRODUCTION EMPLOYEES UNION LOCAL No. 781

### AFFILIATED WITH THE
### INTERNATIONAL BROTHERHOOD OF TEAMSTERS

200 E. Howard Street - Suite 216
Des Plaines, Illinois 60018-5907
(847) 298-9999 Phone



**Executive Board**

RICHARD A. SMITH
*President*

ANTHONY R. DIGRAZIA
*Secretary-Treasurer*

PAUL J. STRIPLING
*Vice President*

GLORIA FLORES
*Recording Secretary*

**Trustees**
Dale C. Fijalkowski
Tracy L. Treadwell
April C. Arnold

July 30, 2007

Mr. Dave Osiadacz
Sunnyside Corporation
225 Carpenter
Wheeling, IL 60090

*Certified Mail*

Dear Mr. Osiadacz:

As you are aware auditors for the Miscellaneous Warehousemen's Local 781 Health and Welfare Fund recently have conducted an audit at your premises to determine if any delinquency existed in contributions due the Fund. The Fund's auditors on a random basis conduct these audits so that over a period of time all the contributing employers to the Health and Welfare Fund will be audited.

During the recent audit, they found that you have violated the collective bargaining agreement. In particular, you utilized non-union personnel to perform bargaining unit work.

The use of non-union workers to perform bargaining unit work has resulted in delinquencies owed to the Local 781, Health and Welfare Fund, and we hereby demand the immediate payment of all delinquent amounts.

We have enclosed our written Grievance that we wish to process through our Grievance Procedure. Additionally, in order to further process this matter, we need the following information:

1.   The names, addresses and phone numbers of the agency(ies) used to bring in these individuals,
2.   The amount paid to these leased individuals by the agency for:
     (a) Wages
     (b) Benefits
3.   The names and addresses of all individuals performing bargaining unit work while not in the Union.

We would like to meet with you in order to resolve this situation or we shall be forced to turn the matter over to Fund Counsel for collection. Please contact me, Richard A. Smith, President of Local 781, I.B. of T., in order to set a time and place for a meeting.

Sincerely,

Richard A. Smith
President
Teamsters Local #781



Local 781 Health and Welfare Fund
Sunnyside Corporation
Payroll Audit Findings and Delinquent Contributions Owed
As of June 30, 2007

| Health and Welfare Benefits: | Payroll Audit Findings |
|---|---|
| Contributions due for 2004 | 3,818.90 |
| Contibutions due for 2005 | 57,379.00 |
| Contributions due for 2006 | 66,495.00 |
| Contributions due for 2007 | 50,765.00 |
| Total | 178,457.90 |
| Add - 1.50% interest on contributions | 36,155.82 |
| Add - 5.00% liquidated damages on contributions | 120,519.63 |
| Total including interest and liquidated damages | 335,133.35 |

| Union Dues: | Payroll Audit Findings |
|---|---|
| Dues owed for 2004 | 217.00 |
| Dues owed for 2005 | 2,925.00 |
| Dues owed for 2006 | 3,201.00 |
| Dues owed for 2007 | 2,343.00 |
| Total | 8,686.00 |
| Add - 1.50% interest on contributions | 1,815.63 |
| *+ initiation fees* | |
| ~~Add - 5.00% liquidated damages on contributions~~ | 6,051.70 |
| Total including interest and liquidated damages | 16,553.33 |
| **Combined Amounts** | 351,686.68 |

# MISCELLANEOUS WAREHOUSEMEN, AIRLINE, AUTOMOTIVE PARTS, SERVICE, TIRE AND RENTAL, CHEMICAL AND PETROLEUM, ICE, PAPER, AND RELATED CLERICAL AND PRODUCTION EMPLOYEES UNION
## LOCAL No. 781

**AFFILIATED WITH THE**
**INTERNATIONAL BROTHERHOOD OF TEAMSTERS**



**200 E. Howard Street • Suite 216**
**Des Plaines, Illinois 60018-5907**
**(847) 298-9999 Phone**

**Executive Board**

RICHARD A. SMITH
*President*

ANTHONY R. DIGRAZIA
*Secretary-Treasurer*

PAUL J. STRIPLING
*Vice President*

GLORIA FLORES
*Recording Secretary*

**Trustees**
Dale C. Fijalkowski
Tracy L. Treadwell
Aprit C. Arnold

August 3, 2007

Mr. Dave Osiadacz
Sunnyside Corporation
225 Carpenter Avenue
Wheeling, IL   60090

Dear Mr. Osiadacz:

As discussed in our phone conversation today, we have agreed to reschedule our meeting for Tuesday, August 14, 2007, at 1:00 PM.

Sincerely,

*Dale C. Fijalkowski*

Dale C. Fijalkowski
Business Representative

DCF:aca

Cc: R.A. Smith

458

**EXHIBIT E**



**Reicin, Pollack & Co., Ltd.**
CERTIFIED PUBLIC ACCOUNTANTS

2150 E. Lake Cook Road, Suite 430
Buffalo Grove, Illinois 60089

voice  847.808.9800
fax     847.808.9998
www.reicinpollack.com

September 15, 2007

Ms. Jeanine Korecky
Accounts Payable Manager
Sunnyside Corporation
225 Carpenter Avenue
Wheeling, IL  60090-6095

Ms. Korecky,

On behalf of the Local Union 781 Health and Welfare Plan, I request that all paid and
unpaid invoices received for temporary labor used during the years 2002 and 2003, as
well as for the current period of June 1, 2007 through the present, be made available to
me as soon as possible.

Please call me when you have assembled the records so that we can set up a date and time
that is convenient for both of us. I can then come to your office and review the requested
records.

Thank You,

Kenneth Weiser, CPA
Reicin Pollack & Co., Ltd.


cc: Robert Bernstein
    Richard Smith

PA

**EXHIBIT F**

LAW OFFICES

# ASHER, GITTLER, GREENFIELD & D'ALBA, LTD.

SUITE 1900
200 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60606

TELEPHONE (312) 263-1500
FACSIMILE (312) 263-1520
E-MAIL  firm@ulaw.com



October 1, 2007

Patricia Costello Slovak
Schiff Hardin, LLP
6600 Sears Tower
Chicago, IL 60606

Re: Sunnyside Corp.

Dear Ms. Slovak:

This firm represents the Teamsters Local 781 Welfare Fund. Mr. DiGrazia has forwarded to me your letter dated September 12, 2007, for a response.

The Welfare Fund is investigating the Employer's use of temporary employees to perform bargaining unit work. The Fund has the right to perform an audit of the Employer's records to review compliance with the Collective Bargaining Agreement. To that end, the Fund has requested additional information through its auditor, Mr. Kenneth Weiser. The Employer's refusal to produce the requested records will result in the filing of a lawsuit to compel production of the records requested by Mr. Weiser in his letter of September 15, 2007, to the Employer.

In addition, after reviewing the Collective Bargaining Agreement and federal case law, the Fund believes that it is entitled to collect delinquent contributions for the hours worked by the employees leased by Sunnyside Corp. Please see <u>Ironworkers Local Union No. 808 v. Sicilia</u>, 45 F.Supp.2d 1332 (D.C. Florida, 1999), regarding the collection of contributions for employees of a third party.

Please contact me if you have any questions.

Sincerely

Robert Greenberg

cc:  Richard Smith
Robert Bernstein
Anthony DiGrazia

**EXHIBIT G**



6600 Sears Tower
Chicago, Illinois  60606
*t* 312.258.5500
*f* 312.258.5600
www.schiffhardin.com

Thurston C. Bailey
312-258-5561
tbailey@schiffhardin.com

November 29, 2007

**VIA FACSIMILE AND CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Mr. Robert Greenberg
Asher, Gittler, Greenfield & D'Alba, Ltd.
200 W. Jackson Blvd., Suite 1900
Chicago, IL 60606

Re:    **Request for Information from Sunnyside Corporation ("Sunnyside")**

Dear Mr. Greenberg:

This letter responds your recent November 12, 2007 letter and to the Local Union 781 Health and Welfare Fund's ("the Fund") initial September 15, 2007 request for paid invoices related to temporary workers used during the years 2002 and 2003 as well as for the period of June 1, 2007 through the present. Specifically, the invoices that the Fund requested in its initial letter from the years 2002 and 2003 are no longer in Sunnyside's possession. Those documents were destroyed during the regular course of business during 2006. Because the temporary workers to whom those invoices related were not employees covered by collective bargaining agreement ("CBA") between Sunnyside and Local 781 and by its provisions related to the Fund, Sunnyside has no obligation to provide or maintain those records.

Indeed, according to the Summary Plan Description ("SPD") for the Fund, an employee eligible for the plan is one "for which contributions are made to the fund" on the employee's behalf." Similarly, the trust documents for the Fund define an "employee" as "any person on whose behalf contributions are obligated to be made to the trust by an employer pursuant to a written agreement." Additionally, with respect to contributions, the trust states that each "employer shall make continuing and proper payments to the trust fund **in accordance with and in the amount required by the Collective Bargaining Agreement** in effect from time to time between the employer and the union." (emphasis added). Clearly, both SPD and the trust documents regarding the Plan defer entirely to the CBA to determine whether an employee is entitled to contributions related to the Fund.   Under the Article XIII of the CBA, Sunnyside is only obligated to contribute for "each regular employee" who has been on the payroll thirty (30) days or more.

Certainly, temporary workers that Sunnyside periodically leases are not "regular" employees. The temporary workers at issue were and are compensated and insured by another employer. Those workers wear different uniforms than Sunnyside's employees and no representations, promises, or assurances have been made to those workers that they were, or that they might become, Sunnyside employees. Clearly, these facts reveal that the temporary workers are not "regular" employees of Sunnyside.



Mr. Robert Greenberg
November 29, 2007
Page 2

Furthermore, the CBA specifically permits Sunnyside to "subcontract." It is undisputed that the subcontracting provisions of the CBA agreement cover and apply to the temporary workers at issue. Nothing in CBA requires that contributions be made for subcontracted or temporary workers and nothing in the CBA indicates that such workers should be treated as "regular" employees for the purposes of the Fund. The CBA clearly does not obligate Sunnyside to make contributions on behalf of such workers or to provide documents concerning them.

Accordingly, Sunnyside is not required to provide contributions or information concerning temporary workers that were used during 2002, 2003 or from June 1, 2007 to the present. Additionally, neither of the cases that have been cited by the Fund, *Central States* and *Sicilia*, involve situations where the persons at issue were temporary, leased or subcontracted workers who were employed by third parties – rendering those cases inapplicable here. Moreover, to the extent that Sunnyside has previously permitted the Fund to review such information, it only did so because of its long-standing relationship with the Union that has spanned over decades, not because the Union or the Fund was entitled to such information.

Lastly, as previously noted, the Union has known about the existence of temporary workers for several years, yet it has filed no grievance nor made any proposals about the issue in collective bargaining. It certainly has never raised any issue, until now, concerning contributions. Because of its delay in raising these issues, the Union has acquiesced and waived its right to assert any claim now.

If you have any questions concerning this letter, please feel free to contact me at the address and phone number above.

Sincerely,

Thurston C. Bailey

TCB/cz
cc:    Richard A. Smith
        Anthony DeGrazia
        Patricia Costello Slovak

CHI\5331654.1



SCHIFFHARDIN LLP

6600 SEARS TOWER
CHICAGO, ILLINOIS  60606
t 312.258.5500
f 312.258.5600
www.schiffhardin.com

Patricia Costello Slovak
(312) 258-5665
Email: pslovak@schiffhardin.com

October 15, 2007

Mr. Robert Greenberg
Asher, Gittler, Greenfield & D'Alba, Ltd.
200 West Jackson Boulevard
Suite 1900
Chicago, Illinois 60606

**Re:**    **Sunnyside Corporation**

Dear Mr. Greenberg:

I have reviewed your letter of October 1 and the case you cited therein, but I do not think that case addresses the issues between the parties here. The Fund has not provided any support for the $335,133.35 demand which was attached to the Union's grievance (nor has it contacted Sunnyside at all concerning this matter). If, as you say, this demand results from the Fund's assertion that contributions were required for the temporary workers who performed services for Sunnyside Corp. between 2004 and 2007, the Fund is not entitled to such contributions because those temporary workers were never "regular employees" for whom contributions were required under Article XIII of the collective bargaining agreement. For the same reason, an audit of earlier invoices of the provider of the temporary workers is unnecessary. There is no dispute that Sunnyside has used temporary workers from agencies on an as needed basis for years with no objection from the Union. There is no dispute that the collective bargaining agreement allows for such action by Sunnyside. The Union has made no proposals to change the contract language on that issue in negotiations and has not grieved the issue until now. There is no dispute that the temporary workers are selected, employed and paid by the temporary agency, thus distinguishing this situation from the Sicilia case. These workers simply are not and never have been Sunnyside employees and, hence, are not plan participants. The Union has waived any right it may have had to argue differently, so the Fund has no basis to seek additional information or contributions as to these workers.

If there is some other basis for the Fund's request, my client will, of course, consider it. I look forward to hearing from you.

Sincerely,

Patricia Costello Slovak

PCS:kla
cc:    L. Carmichael
       R. Sarna
       T. Bailey
CHI\ 5260178.1

CHICAGO  I  WASHINGTON  I  NEW YORK  I  LAKE FOREST  I  ATLANTA  I  SAN FRANCISCO


**SCHIFF HARDIN**LLP

6600 Sears Tower
Chicago, Illinois  60606
*t* 312.258.5500
*f* 312.258.5600
www.schiffhardin.com

Patricia Costello Slovak
(312) 258-5665
Email: pslovak@schiffhardin.com

September 12, 2007

Mr. Anthony R. DiGrazia
Union Trustee
Miscellaneous Warehousemen's Local No. 781
    Health and Welfare Fund
200 East Howard Street, Suite 216
Des Plaines, Illinois 60018-5907

Re:    **Sunnyside Corporation**

Dear Mr. DiGrazia:

Please be advised that we represent Sunnyside Corporation in connection with the Union's grievance seeking, inter alia, contributions to the Health and Welfare Fund.  Please direct further communications to me and let me know if you have counsel with whom I should communicate.

With regard to the merits, Sunnyside denies that it owes any contributions to the Health and Welfare Fund for those individuals who work or have worked as temporary workers at Sunnyside.  Those individuals are not and have not been Sunnyside employees and there is no limitation in the collective bargaining agreement on the use of temporary workers.  The temporary workers did not participate in the Health and Welfare Plan and certainly made no claims against it during the period covered by the grievance.  In addition, the Union has waived any objection it may have had the right to make regarding the Employer's practice.

There is simply no basis for the Union's grievance here or for any claim by the Health and Welfare Fund for contributions.  I urge you to reconsider your threat to place the matter in collection, as such an action would not be justified in light of the facts of this matter.

Feel free to contact me if you have any questions.

Sincerely,

Patricia Costello Slovak

PCS:kla
cc:    L. Carmichael
       R. Sarna
       T. Bailey

CHI1\5205425.1

**EXHIBIT H**

LAW OFFICES

# ASHER, GITTLER, GREENFIELD & D'ALBA, LTD.

SUITE 1900
200 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60606
————
TELEPHONE (312) 263-1500
FACSIMILE (312) 263-1520
E-MAIL    *firm@ulaw.com*



December 3, 2007

*By fax and mail*

Thurston C. Bailey
Schiff Hardin, LLP
6600 Sears Tower
Chicago, IL 60606

   Re: Sunnyside Corp.

Dear Mr. Bailey:

   This is in response to your letter of November 29, 2007. The Union disputes your claim that the Employer has the right to utilize temporary workers. To the contrary, the collective bargaining agreement between the parties does not allow the signatory to use temporary workers in the manner utilized by the Employer. Moreover, the Union disputes the Employer's interpretation of the management rights clause language regarding subcontracting and its applicability to the present circumstances.

   Therefore, this serves as the Union's request to arbitrate this dispute. Please contact me at your convenience so that we may attempt to mutually agree upon an arbitrator to hear the matter. In the event that I do not hear from you by December 10, 2007, I shall assume that a mutual selection of an arbitrator will not be possible. I will then contact FMCS and request a panel of seven arbitrators who are members of the National Academy of Arbitrators and who are from the Chicago metropolitan area so that we may select an arbitrator from that list. Once I receive a copy of the panel, I will contact you in order to select the arbitrator.

   Please contact me if you have any questions.

Sincerely

Librado Arreola

cc:  Richard Smith
   Robert Bernstein
   Anthony DiGrazia