THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781 HEALTH AND WELFARE FUND | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 07 C 6878 |
| SUNNYSIDE CORPORATION, an Illinois Corporation, | ) ) ) | JUDGE KENNELLY MAGISTRATE JUDGE VALDEZ |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY LITIGATION PENDING ARBITRATION**

Defendant, Sunnyside Corporation ("Sunnyside") hereby submits its Memorandum in Support of its Motion to Stay Litigation Pending Arbitration and states as follows:

**INTRODUCTION**

In this lawsuit,[1] the Miscellaneous Warehousemen's Local 781 Health and Welfare Fund ("Plaintiff" or "Fund") seeks to recover $178,457.90 in contributions on behalf of temporary workers who were not, and never have been, employees of Sunnyside and who are not, and never have been, covered by the terms of the collective bargaining agreement (the "CBA") between Sunnyside and the Miscellaneous Warehousemen's Local 781 ("the Union").[2]  Specifically, Plaintiff claims that the CBA requires Sunnyside to "contribute to the fund on behalf of individuals performing collective bargaining unit work at the Defendant's place of business" and

---

[1] This lawsuit was filed on December 6, 2007.

[2] The full name for this union is the Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire and Rental, Chemical and Petroleum, Ice, Paper, and Related Clerical and Production Employees Union, Local 781, affiliate of the International Brotherhood of Teamsters.

that Sunnyside did not make contributions on behalf of those workers. Although the Plaintiff's Complaint does not identify the individuals for whom it believes that Sunnyside allegedly failed to make contributions, in recent correspondence, both the Fund and Union have asserted that Sunnyside owes contributions for certain temporary workers who Sunnyside leased from a third party. As such, the primary issue involved in Plaintiff's lawsuit concerns contributions related to these leased temporary workers and the Fund's entitlement to have Sunnyside make contributions on behalf of those workers under the CBA. The Union has already requested arbitration of this dispute and the parties are currently in the process of selecting an arbitrator. Because this lawsuit involves interpreting the provisions of the CBA and the CBA requires arbitration of all issues related to its interpretation, Sunnyside seeks to stay this lawsuit pending the arbitration of these same issues between Sunnyside and the Union.

## ARGUMENT

    A.    **The Dispute At Issue In This Lawsuit Clearly Involves Interpreting and Applying Provisions Of The CBA.**

The CBA states that Sunnyside shall make contributions for **"each regular employee covered by this Agreement who has been on the payroll thirty (30) days or more."** *See* CBA attached to Defendant's Motion to Stay as Ex. A at Art. XIII (section 1) (emphasis added). The CBA does not define the term "regular employee." Nor does the CBA use the term "regular employee" in any other provision. Although Article III (Management Rights) contains a management rights provision that permits Sunnyside to subcontract work, as it did with the temporary leased workers, it does not state that such workers are "regular employees" or that they are entitled to have contributions made to the Fund on their behalf. *See id.* at Art. III and Art. VIII (section 1).

Notably, neither the Trust Agreement regarding the Fund ("Trust Agreement") nor the Fund's Summary Plan Description ("Plan Documents") elaborate on the term "regular employee" or otherwise explain who is entitled to have contributions made on his or her behalf. The Trust Agreement requires employers to contribute to the Fund on behalf of "employees." *See* Trust Agreement, attached to Defendant's Motion to Stay as Ex. B at pp. 3 and 18-19. That Agreement also defines "employee" as "any person on whose behalf contributions are obligated to be made to the Trust by an Employer pursuant to a written agreement." *See* Ex. B at p. 2. Similarly, the Plan Documents indicate that eligibility for benefits/contributions requires that an "employee" has performed work in "covered employment." *See* Plan Documents, attached as Ex. C to Defendant's Motion to Stay at p. 7. The Plan Documents define "covered employment" to mean "[the employee] w[as] working for an Employer that was required to contribute to the Fund on [the employee's] behalf"). *See id.* Clearly, the Trust Agreement and the Plan Documents rely on the CBA to determine what individuals are entitled to have contributions made on their behalf by Sunnyside.

It is undisputed the Fund and Sunnyside have different views on how and whether the CBA provisions regarding contributions to the Fund apply to temporary leased workers. Although it has never so claimed in the past, the Fund now contends that the contribution obligation provisions of the CBA apply to these temporary workers. The initial grievance from the Union contends not only that the "company has violated the union contract by using non-union workers to perform bargaining unit work," but it also states, in its request for relief, that "[t]he Local 781 Health and Welfare fund seeks to be compensated for all premiums it would have received had the employer not violated the contract." *See* July 27, 2007 Grievance Report, attached as Ex. D to Defendant's Motion to Stay. Thereafter, in seeking information concerning

3

the temporary workers leased by Sunnyside, an accountant, representing the Fund, stated "[o]n behalf of the Local 781 Health and Welfare Plan, I request all paid and unpaid invoices received for temporary labor." *See* September 15, 2007 letter, attached as Ex. E to Defendant's Motion to Stay. In subsequent correspondence to Sunnyside, the Fund's attorney asserts that "[t]he Welfare Fund is investigating the Employer's use of temporary employees to perform bargaining unit work" and that "the Fund believes that it is entitled to collect contributions for the hours worked by the employees leased by Sunnyside Corp." *See* October 1, 2007 letter, attached as Ex. F to Defendant's Motion to Stay.

In stark contrast, Sunnyside contends the temporary workers at issue herein are not Sunnyside's employees and they have never been covered under the provisions of the CBA concerning contributions to the Fund because they are not "regular employees" within the meaning of the CBA. Accordingly, they are not covered by the Trust Agreement and Sunnyside is not required to make contributions to the Fund on their behalf. *See* Letters dated November 29, 2007, October 15, 2007 and September 12, 2007 from Sunnyside to the Fund and the Union, attached as Exhibit G to Defendant's Motion to Stay. Sunnyside also contends that because it has openly used temporary leased workers for a number of years with no grievance or contract proposals from the Union or demand from the Fund, the Fund has no rights to these contributions. Sunnyside further contends that its past practice of not making contributions on behalf of these temporary workers without protest or complaint clearly supports Sunnyside's position that it is not required by the CBA to make such contributions.

Clearly, a determination of who qualifies as a "regular employee" within the meaning of the CBA will be required to ascertain whether Sunnyside is required to make contributions related to temporary workers. That determination will affect liability in this lawsuit and it is

4

precisely that determination which will be made by the arbitrator in the pending arbitration between Sunnyside and the Union.

> **B.    This lawsuit must be stayed pending arbitration because it clearly involves interpretation of the CBA and because the CBA requires that disputes concerning its interpretation be resolved through its grievance procedures, including arbitration.**

The Seventh Circuit has held that stay of a lawsuit pending a labor arbitration is proper when the lawsuit requires interpreting a CBA and when the CBA requires use of arbitration to resolve disputes concerning its interpretation. *See, e.g., Tice v. American Airlines*, 288 F.3d 313, 318 (7th Cir. 2002), *cert. denied,* 527 US 1036 (1999) (holding that where a potentially dispositive issue in a lawsuit depends on the resolution of a dispute regarding the meaning of a collective bargaining agreement, the lawsuit should be stayed pending the outcome of arbitration). Indeed, in *Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150*, 351 F.2d 576, 579 (7th Cir. 1965), the court, upholding a district court's decision to stay a lawsuit pending arbitration, stated "the function of a court is very limited when the parties have agreed to submit all questions of contract interpretation to an arbitrator." Further, the court reasoned that staying the lawsuit was proper because the lawsuit involved interpretation of a collective bargaining agreement and the agreement indicated that issues of contract interpretation should have been resolved by arbitration. *See id.* at 580.

Courts have also held that it is appropriate to stay proceedings concerning an employee's rights to ERISA benefits where those rights must be determined by applying and/or interpreting the provisions of a collective bargaining agreement. In *Viggiano v. Shenango China Division of Anchor Hocking Corp.*, 750 F.2d 276, 278-279 (3rd Cir. 1984), an employer stopped paying certain benefits and making medical insurance payments for employees while those employees went on strike. The union later sued for damages related to the stoppage of the payments, which

5

they alleged was a violation of their collective bargaining agreement. *Id.* at 278. There, the Court noted that the union was seeking "judicial disapproval of the employer's interpretation of the collective bargaining agreement" and that "**firmly established labor policy is that courts should not decide such questions when a contract provides for another forum**." *See id.* (Emphasis added). Under those circumstances, the court held that because the dispute in question involved interpretation of a collective bargaining agreement (determining whether the employer was required to make contributions), and the agreement provided that such issues should be grieved and/or arbitrated, the issues related to contract interpretation should have been brought before an arbitrator. The court further ordered that the lawsuit be stayed pending the results of the arbitration proceedings. *See id.* at 281; *see also ,e.g., Palumbo v. United Parcel Service,* 2007 WL 2900403,*4 (D.N.J. 2007) (citing *Viggiano* and granting a motion to stay a lawsuit to collect contributions pending an arbitration to determine whether the employee had an obligation to make contribution to a benefit fund).

Stay of a lawsuit is proper even when the plaintiff is a benefit fund and is not a party to the collective bargaining agreement at issue. *Chicago District Counsel of Carpenters Pension Fund v. Market Contracting Services, Inc.*, 2001 WL 197054 (N.D. Ill. 2001) is illustrative. In that case, a pension fund filed a lawsuit against an employer alleging that the employer had failed to post a bond in the amount required under the terms of the collective bargaining agreement between the employer and the Union. *Id*. at *1-2. In response to the suit, the employer filed a motion to dismiss the complaint or, in the alternative, a motion to stay the case pending arbitration concerning the amount that the employer was required to post on behalf of employees with the Fund. Because the collective bargaining agreement did not exclude disputes

concerning the bonding requirement from arbitration, the court held that the dispute about that issue was subject to arbitration.  Accordingly, it stayed the ERISA lawsuit pending arbitration.

Another case, *Chicago District Counsel of Carpenters Pension Fund v. Fonsa Construction, Inc.,* 2000 WL 1469438, *2-3 (N.D.Ill. 2000), also involved a lawsuit by a pension fund against an employer in which the employer moved to stay the lawsuit pending arbitration.  The pension fund had filed a lawsuit regarding the employer's obligation under the terms of the collective bargaining agreement to provide additional bond amounts for employees to secure payment of wages and fringe benefits contributions.  *See id*. at *1.  The pension fund specifically argued that the motion to stay proceedings could not be granted because it was not party to the collective bargaining agreement between the Union and the employer. *See id*. at *2.  The court, however, examined the language of the CBA agreement to determine whether the dispute was subject to arbitration.  *See id*. at *2.  In making its determination, the court noted that the grievance/arbitration provisions of the CBA did not limit the use of grievance procedures to the Union and the Employer, but instead stated, "the board of arbitration shall have jurisdiction over **all questions involving the interpretation and application of any section of this agreement**." *See id*.  (emphasis added).  Based on that broad language, because the dispute involved an interpretation of the collective bargaining agreement and the agreement required arbitration of all issues involving its interpretation and application, the court granted the defendant's motion to stay the lawsuit pending arbitration.  *See id*.

Additionally, a collection action by a fund should not be permitted to continue when there is a dispute concerning an employer's obligation under an agreement to make payments on behalf of an employee.  In *Jaffee v. Shanin Company*, 763 F. Supp. 286 (N.D.Ill. 1991), a benefit fund filed a lawsuit alleging that the employer had failed to make contributions on behalf of a

7

part time employee and it sought to collect those contributions. The employer denied having any obligation to make such payments because part-time employers were not entitled to them under the collective bargaining agreement. *Id.* at 287. Although the CBA permitted the fund to take all actions necessary to "collect" payments, the agreement also stated broadly that disputes arising out the interpretation of the agreement were to be resolved by arbitration. *Id.* at 291. Under those circumstances, the court held that the agreement required arbitration of whether the employer was required to make payments to the fund on behalf of the employee before any collection action by the fund could proceed in court and dismissed the fund's action pending the outcome of arbitration. *Id.* at 291.

In this lawsuit, the grievance provisions of the CBA broadly require that all issues related to its interpretation, application and violation of its provisions be handled by the grievance procedures that it outlines. Article XXVIII of the CBA states "grievances are defined as (1) a dispute as to the interpretation and application of a specific provision of this Agreement or (2) a charge of violation of a specific provision of this Agreement." *See* CBA at Article XXVIII.[3] The CBA does not limit the application of its grievance procedures, it does not exclude issues regarding entitlement to Fund benefits, and it does not state that disputes concerning fund contributions cannot be resolved by arbitration. Notably, because CBA requires that Sunnyside become a participating employer in the Fund and it incorporates the payment terms of the Trust Agreement into the CBA, interpreting or applying those terms of that agreement also constitutes interpreting and applying provisions of the CBA. *See* CBA at Article VIII. The disputed issues in this lawsuit clearly involve interpretation and application of the provisions of the CBA (and any collection provision of the Trust Agreement) to temporary leased workers. *See* Exs. B & C.

---

[3] The grievance procedure begins with presenting a grievance to management and ends with arbitration. *See* CBA at XVVIII.

8

Like the agreements in *Fonsa Construction* and *Market Contracting Services, Inc.*, *supra*, the CBA's grievance provision contains no limiting language and it clearly applies to disputed issues involving its interpretation, application and alleged violations of its provisions—indicating that the issues in this lawsuit concerning the application of the CBA and the Trust Agreement to temporary workers must be resolved by arbitration. Further, as demonstrated by *Shanin*, any collection action by the Fund cannot proceed until an arbitrator determines whether Sunnyside even has an obligation to make contributions on behalf of the temporary leased workers at issue in this lawsuit.

  **C. Granting this Motion to Stay Promotes Judicial Economy and Would Not Prejudice the Fund.**

Before this lawsuit was filed, the Union initiated CBA's grievance procedures by filing a grievance concerning the issue of whether the leased temporary workers are entitled to have contributions made on their behalf and whether Sunnyside's use of temporary workers is and was a violation of the CBA. *See* Ex. D. The Grievance sought, among other things, to recover unpaid contributions to the Fund for non-union, "leased" temporary workers in the amount of $178,457.90, precisely the same amount sought in this lawsuit. After the Union and Sunnyside were not able to resolve this grievance, the Union made a demand for arbitration of these same issues. *See* December 3, 2007 letter (Demand for Arbitration) attached to the Motion as Ex. H. Sunnyside agreed to proceed to arbitration and the parties are currently in the process of selecting an arbitrator. There is no doubt that the arbitrator will be required to interpret the CBA and determine whether the temporary workers are entitled to have contributions made to the Fund on their behalf.

 Under these circumstances, staying this lawsuit would clearly prevent multiple interpretations of the same CBA provisions and it promotes judicial economy. Indeed, allowing

9

this lawsuit to proceed could result in the court and the arbitrator reaching different conclusions concerning the critical issue to both proceedings--whether the CBA requires Sunnyside to make contributions on behalf of temporary workers.  Further, if the arbitrator determines that Sunnyside is not required to make such contributions, then there would be no reason to proceed with this litigation.  On the other hand, if the arbitrator determines that Sunnyside was and is required to make these contributions, then this lawsuit would likely become one regarding the amount and extent of liability for contributions. Clearly, under these circumstances, staying these proceedings pending arbitration would prevent such problems and it would conserve the court's resources.  Furthermore, staying this lawsuit pending arbitration would not result in the loss of any of Plaintiff's rights or remedies in this litigation and it is consistent with the law of this Circuit. *See Tice v. American Airlines*, 288 F.3d 313, 318 (7th Cir. 2002).

Accordingly, for the reasons set forth above, Defendant Sunnyside Corporation respectfully requests that this Court grant its Motion to Stay this litigation pending the completion of the pending arbitration between the Union and Sunnyside.

Respectfully submitted,

Sunnyside Corporation

By: /s/      Thurston C. Bailey
       One of its Attorneys

Patricia Costello Slovak
Atty No.: 263439
Thurston C. Bailey
Atty No.: 24006783
Schiff Hardin LLP
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

**CERTIFICATE OF SERVICE**

      I, Thurston C. Bailey, hereby certify that on January 2, 2008, I served the foregoing Defendant's Memorandum in Support of Defendant's Motion to Stay Litigation Pending Arbitration by facsimile and United States First Class mail and I also electronically filed it Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

> Robert B. Greenberg
> Asher, Gittler, Greenfield & D'Alba, Ltd.
> 200 West Jackson Blvd.
> Suite 1900
> Chicago, Illinois 60606
> 312-263-1500
> rbg@ulaw.com

                                            /s/    Thurston C. Bailey
                                                       Thurston C. Bailey

Schiff Hardin LLP
6600 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606
Tel. (312) 258-5500
Fax (312) 258-5600
No. 90219

CH1\5372515.5