THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781 HEALTH AND WELFARE FUND  Plaintiff,  v.  SUNNYSIDE CORPORATION, an Illinois Corporation,  Defendant. | NO. 07 C 6878  JUDGE KENNELLY MAGISTRATE JUDGE VALDEZ |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS RESPONSE TO DEFENDANT'S MOTION TO STAY LITIGATION PENDING ARBITRATION**

Plaintiff, Miscellaneous Warehousemen's Local 781 Health and Welfare Fund ("Fund") hereby submits its Memorandum in Support of its Response to Defendant's Motion to Stay Litigation Pending Arbitration, and states as follows:

**I.    Background**

On December 6, 2007, the Fund filed this action to recover delinquent contributions in the amount of $178, 457.90.  The suit arises under Sections 502(g)(2), (a)(3), and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1132(g)(2), (a)(3), and 1145.  There is currently pending an arbitration between the Miscellaneous Warehousemen's Local 781 ("Union") and Sunnyside Corporation ("Defendant" or "Sunnyside") regarding the classification of specific individuals performing bargaining unit work.  Sunnyside is the party from which the Fund seeks recovery of delinquent contributions, and the disputed individuals in the pending arbitration are the same employees for which the Fund seeks recovery.  On January 2, 2008, Sunnyside filed its Motion to Stay Litigation Pending Arbitration.  However, Plaintiff's

right to recovery through legal proceedings is established by Article VI, Section 6.02 of the Restated Agreement and Declaration of Trust ("Trust Agreement") and Article XIII, Section 1 of the Collective Bargaining Agreement ("CBA").

## II.     Argument

### A.    The Dispute at Issue in this Motion to Stay Litigation Involves Interpreting and Applying Provisions of the CBA and Trust Agreement.

Defendant's motion to stay litigation pending arbitration is without merit because (1) the Fund is not dependent on the Union for an assertion of the Fund's collection interests, and (2) the Fund's collection remedies are not incorporated into the CBA's arbitration procedures.

"[C]ompelling benefit plans to rely on unions would erode the protections ERISA assures to beneficiaries, for...unions' duties toward beneficiaries are of a quite different scope [than trustees']." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 575-576, 763 F.Supp. 2833, 2843 (1985). "[C]ourts must carefully examine the pertinent trust and collective bargaining agreements to determine whether parties intended to arbitrate disputes between trust funds and employers." *Pipefitters' Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc.*, 856 F.2d 837, 840 (7th Cir. 1988) (citing *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371-372, 104 S.Ct. 1844, 1848-1849 (1984)).

### 1.    Sunnyside's Proffered Use of *Tice v. American Airlines, Inc.*, *Pietro Scalzitti Corp. v. IUOE, Local 150*, and *Viggiano v. China Division of Anchor Hocking Corp.* is Not Dispositive of This Motion.

In Defendant's Motion to Stay Litigation Pending Arbitration, Sunnyside relies on the proposition that litigation is properly stayed, where both the litigation and arbitration involve interpretation of similar CBA provisions, and where the CBA requires that interpretations be resolved through arbitration. *See* Def.'s Memo. ¶5. This proposition is inapplicable to the current

proceedings for two reasons: Sunnyside's broad interpretation of the rule stretches beyond the limits of supporting precedent; and the cases cited by Sunnyside are distinguishable from this matter.

First of all, there is no presumption of arbitrability in disputes between a trust fund and employer regarding the recovery of contributions. *See Mosbeck*, 856 F.2d at 839 (citing *Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849); *Chicago Dist. Council of Carpenters Pension Fund v. Market Contracting Serv., Inc.*, 2001 WL 197054, *1 (N.D. Ill. 2001) (unreported) (citing *Schneider* and *Mosbeck*, *supra*). Both the U.S. Supreme Court and Seventh Circuit Court distinguish between contribution recovery by trust funds and unions. *See Central Transport*, 472 U.S. at 575-576, 105 S.Ct. at 2843; *Mosbeck*, 856 F.2d at 839. In *Schneider v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, the U.S. Supreme Court actually rejected a claim similar to the one asserted by Sunnyside in its Memorandum in Support of its Motion. *See* Def.'s Memo. ¶¶5-6. In *Schneider*, the court rejected the lower court's finding that, "arbitration is required in claims such as these [suit for recovery by a trust fund] where interpretation of the collective-bargaining agreement is at issue." *See* 466 U.S. at 367, 104 S.Ct. at 1846-1847. The rationale for the U.S. Supreme Court's and Seventh Circuit Court's position is grounded in a recognition of national labor policy, and is consistent with Plaintiff's position in opposition to Defendant's Motion to Stay Litigation Pending Arbitration. Moreover, unions and trust funds have different interests regarding employees, and different relationships with an employer. *See Schneider*, 466 U.S. at 376, 104 S.Ct. at 1851; *Mosbeck*, 856 F.2d at 839. Although a union is likely to support the recovery of delinquent contributions for bargaining unit employees, a union may have a specialized interest that prompts the union to negotiate particular benefits through arbitration.

On the other hand, a trust fund has the duty to recover the delinquent contributions. *See id.* at 842-843 (quoting *Central Transport*, 472 U.S. at 576, 105 S.Ct. at 2843). Furthermore, trust funds are not able to assert the same economic weapons as unions. *See Mosbeck*, 856 F.2d at 839. The recourse to economic weapons is exactly what underlies the presumption in favor of arbitration in traditional labor relationships between unions and employers, *see Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849. Whereas economic weapons are not available to trust funds, national labor policy is not served by forcing them to resolve disputes through arbitration. *See id.* (cited by *Mosbeck*, 856 F.2d at 839). In recognition that "Congress has affirmatively opened the federal courts to trust funds so that they might enforce an employer's obligations," *Mosbeck*, 856 F.2d at 839 fn.1, Plaintiff seeks to recover delinquent contributions from Defendant.

      Furthermore, the cases cited by Sunnyside, in support of forced arbitration where CBA interpretation is necessary, do not involve disputes between a trust fund and employer; rather, these cases involve disputes between a union and employer. *See Tice v. American Airlines, Inc.*, 288 F.3d 313 (7th Cir. 2002); *Pietro Scalzitti Co. v. Intl. Union of Operating Engineers, Local No. 150*, 351 F.2d 576 (7th Cir. 1965); *Viggiano v. China Division of Anchor Hocking Corp.*, 750 F.2d 276 (3d. Cir. 1984). In fact, the Seventh Circuit cases cited by Sunnyside regarding forced arbitration do not involve trust funds at all. Of these Seventh Circuit cases, *Tice v. American Airlines*, 288 F.3d 313, involves the rights of employees under the Age Discrimination in Employment Act, and *Pietro v. IUOE, Local No. 150*, 351 F.2d 576, involves Title VII rights. In similar Seventh Circuit cases not cited by Sunnyside, the courts held differently depending on the statutory rights at issue and parties to the dispute. *See e.g. Fowler v. Colfax Envelope Corp.*, 2002 WL 1676568, *3 (N.D. Ill. 2002) (unreported) ("However, as [*Tice*] concerns issues of

arbitration in the airline industry, we do not find it controls this case."); *Lindahl v. American Telephone & Telegraph Co.*, 699 F.Supp. 267, 272 (N.D. Ill. 1985) ("[M]ost courts have not imposed an exhaustion requirement [of a collectively bargained arbitration procedure] in ERISA suits alleging breach of fiduciary duties."). Sunnyside also cites *Viggiano v. Anchor Hocking Corp.*, 750 F.2d 276, in support of its Motion. Even though *Viggianno*, 750 F.2d 276, involves an ERISA matter, it is not controlling in this Circuit as a 3rd Circuit ruling; *Viggiano* also does not involve a dispute between a trust fund and employer. *Id.*. Moreover, *Viggianno* provides little guidance in this matter, as the circumstances of the dispute in that case resulted after "an employer stopped paying certain benefits and making medical insurance payments for employees while those employees went on strike." *See* Def.'s Memo. ¶5 (citing *Viggiano*, 750 F.2d at 278-279). It is exactly this kind of economic weapon that a trust fund is not equipped to respond in kind, and is therefore allowed avenues for resolution not otherwise available to unions. *See Mosbeck*, 856 F.2d at 839 (citing *Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849). Ultimately, *Tice*, 288 F.3d 313, *Pietro*, 351 F.2d 576, and *Viggiano*, 750 F.2d 276, do not properly address Sunnyside's position in its Motion to Stay Litigation Pending Arbitration, and serve only to confuse the matter before this court.

> **2.     The Governing Documents in *Chicago Carpenters Pension Fund v. Market Contracting Services, Inc.*, *Chicago Carpenters Pension Fund v. Fonsa*, and *Jaffee v. Shanin Co.* are not Characteristic of the Agreements Between the Fund and Sunnyside.**

In Defendant's Memorandum in Support of its Motion to Stay Litigation Pending Arbitration, Sunnyside asserts that "[s]tay of a lawuit is proper even when the plaintiff is a benefit fund and is not a party to the collective bargaining agreement at issue." (Def.'s Memo. ¶6.) To the contrary, stay of such a lawsuit may not be proper, and the cases cited by the

5

Defendant in support of this proposition are distinguishable. Additionally, the precedent from which these cases arise actually supports Plaintiff's position in opposition to Defendant's Motion.

Courts do not presume the need for arbitration when presented with a recovery claim by a trust fund. *See Mosbeck*, 856 F.2d at 840 (citing *Schneider*, 466 U.S. at 371-372, 104 S.Ct. at 1848-1849). Because no such presumption exists, the court should determine the intent of the Fund and Sunnyside regarding the creation of rights and responsibilities of the trustees and employer. *See id.*. Although Sunnyside attempts to demonstrate caselaw in support of its interpretation of this intent, neither the cases, nor the language of the governing agreements are properly applied by the Defendant.

The cases cited by Sunnyside in support of its Motion involve suits by trust funds seeking the recovery of contributions, where the courts granted a stay of litigation pending arbitration. *See* Def.'s Memo. ¶¶6-9 (citing *Market Contracting*, 2001 WL 197054; *Chicago Dist. Council of Carpenters Pension Fund v. Fonsa*, 2000 WL 1469438 (N.D. Ill. 2000) (unreported); *Jaffee v. Shanin Co.*, 763 F.Supp. 286 (N.D. Ill. 1991)). However, in each of these cases, the court specifically noted that there was no trust agreement available for interpretation, only a collective bargaining agreement. The precedent that would have been applied, were a trust agreement available, actually supports the denial of a motion to stay litigation. *See Schneider*, 466 U.S. 364, 104 S.Ct. 1844; *Mosbeck*, 856 F.2d 837. In fact, each court in the cases cited by Sunnyside expressly recognize the qualification behind their findings. This qualification being that no trust agreement was available to the court for interpretation. *See Market Contracting*, 2001 WL 197054, **1-2; *Fonsa*, 2000 WL 1469438, **1-2; *Shanin*, 763 F.Supp. at 288-289. The matter

before the court in this case involves both a trust agreement and CBA. In the end, these governing agreements include language substantially similar to the language in the governing agreements of both *Schneider*, 466 U.S. 364, 104 S.Ct. 1844, and *Mosbeck*, 856 F.2d 837., which upheld the denial of motions to stay litigation. These cases are expressly recognized and discussed in the cases cited by Sunnyside; however, it is *Schneider* and *Mosbeck* that are controlling in this matter. *Supra.*

Where a trust agreement is available, the courts look to its language first to determine the intent of the parties. *See Shanin,* 763 F.Supp. at 289-290 (citing *Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849 and *Mosbeck*, 856 F.2d at 843). The question is whether the parties "intended...the trustees to submit to arbitration before being able to sue in federal court." *See id..* The trust agreements in both *Schneider* and *Mosbeck* expressly provided trustees the power to seek recovery through litigation. *See Schneider*, 466 U.S. at 373, 104 S.Ct. at 1849 ("any legal proceedings in their discretion"); *Mosbeck*, 856 F.2d at 840 ("may take such steps, including...any proceeding at law"). This language is substantially similar to provisions of the Trust Agreement in this case. *See* Trust Agreement at Article VI, Section 6.02 ("The Trustees may take any and all steps, including the institution and prosecution of and intervention in *any legal proceeding*, that may be necessary or desirable to effectuate the collection or preservation of Contributions or other moneys...") (emphasis added). No other language is available in the Trust Agreement that conditions the exercise of these powers on any grievance procedures.

The courts also look to the plain language of the CBA in order to determine the intent of the parties. *See Mosbeck*, 856 F.2d at 841 (citing *Schneider*, 466 U.S. at 373, 104 S.Ct. at 1850). Having already established the trustees' right to sue from the Trust Agreement, the question is

whether the CBA indicates an intent to require the exhaustion of arbitration by trustees before seeking the recovery of contributions through federal courts. *See Shanin*, 763 F.Supp. at 289 (citing *Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849 and *Mosbeck*, 856 F.2d at 843).  In *Schneider*, the court found no such evidence in the arbitration clause of the collective bargaining agreement by recognizing that the clause simply directed disputes to arbitration when "aris[ing] between the Company and the Union or any employee of the Company".  *See* 466 U.S. at 374, 104 S.Ct. at 1850.  The grievance procedures of the CBA in this case similarly only address "employees," the "Union," "Management," and the "Employer." *See* CBA at Article XXVIII. Even though the CBA in this case does have a general arbitration clause, and refers to the use of the procedure by "parties," *see* CBA at Article XXVIII, such language does not diminish the clear intent of the Trust Agreement.  As held by the court in *Mosbeck*, this court should find the reference to "parties" as explicitly addressing the parties to the CBA. *See* 856 F.2d at 841.  Also in *Mosbeck*, the court recognized the importance of language in the collective bargaining agreement that stated "[t]he Agreements and Declarations of Trust between the parties hereto under which...contributions are being administered are hereby continued in full force and effect for the term of this Agreement." *See id.*.  Although the CBA in this case does not have parallel language, where it addresses the trust fund, the CBA requires that trustees "carry out the terms and conditions of the trust instrument," and the "[t]he obligation to make the above contributions shall continue when the Collective Bargaining Agreement is being negotiated." *See* CBA at Article XIII, Section 1.  This language serves a similar purpose to the collective bargaining agreement language in *Mosbeck*, as evidence that the trust fund be enforced by the trustees separate from the grievance procedures of the CBA. *See e.g. Mosbeck*, 856 F.2d at 841.

The use of *Market Contracting*, 2001 WL 197054, *Fonsa*, 2000 WL 1469438, and *Shanin*, 763 F.Supp. 286, by Sunnyside to establish that other general language in the CBA, or the lack thereof, demonstrates an intent to have the Fund submit to arbitration should be disregarded, in light of the fact that they do not involve the interpretation of a trust agreement. Sunnyside applies the rules of these cases to conclude that "[t]he CBA does not limit the application of its grievance procedures, it does not exclude issues regarding entitlement to Fund benefits, and it does not state that disputes concerning fund contributions cannot be resolved by arbitration." *See* Def.'s Memo. ¶8. However, this application of precedent is only relevant to show the intent of the Fund and Sunnyside if there were no Trust Agreement available. To the contrary, the Trust Agreement expressly establishes the right of trustees to initiate "any legal proceedings," and as was held by the U.S. Supreme Court and Seventh Circuit Court when presented with similar language, *see Schneider*, 466 U.S. at 372, 104 S.Ct. at 1849; *Mosbeck*, 856 F.2d at 843 at 840, this court should deny the Defendant's Motion to Stay Litigation Pending Arbitration.

    **B.**    **Judicial Economy Should Not Compromise the Fund's Rights to the Recovery of Delinquent Contributions.**

Sunnyside contends in its Memorandum in Support of its Motion to Stay Litigation Pending Arbitration that the arbitrator's determination may limit the Fund's ability to recover contributions, under the assertion that "if the arbitrator determines that Sunnyside is not required to make contributions, then there would be no reason to proceed with this litigation." *See* Def.'s Memo. ¶10. Any findings or conclusions by the arbitrator are partly a result of the Union's position in the arbitration itself. Where, as Sunnyside contends, the Fund is potentially foreclosed from recovery of contributions through the federal courts as a result of findings by an

arbitrator, the Fund is reliant on the Union to assert its interests in arbitration. It is exactly this reliance that is unsupported by precedent and policy. *See Central Transport*, 472 U.S. at 576, 763 F.Supp. at 2843; *Schneider*, 466 U.S. at 375, 104 S.Ct. at 1851; *Mosbeck*, 856 F.2d at 843. Ultimately, the Fund's independent collection powers are expressly established by the terms of the Trust Agreement and CBA; therefore, the more Sunnyside asserts the potential dispositive value of arbitrating certain terms of the Trust Agreement and CBA, the less Sunnyside may legitimately assert that the pending arbitration will not prejudice the Fund.

### III. Conclusion

The matter for review in Defendant's Motion to Stay Litigation Pending Arbitration is one of contract interpretation. There is no presumption of arbitrability in cases arising under ERISA between a trust fund and employer regarding the recovery of contributions. Where a trust agreement establishes the rights of trustees to proceed through litigation, and the plain language of a collective bargaining agreement does not otherwise limit the trustees' power, the U.S. Supreme Court and Seventh Circuit Court have upheld the exercise of this right. Such a conclusion recognizes the express language of the trust agreement, and the national labor policy, which leaves trust funds outside the traditional labor relationship of unions and employers. A denial of Defendant's Motion is consistent with both precedent and national labor policy, and Plaintiff respectfully requests that the Defendant's Motion to Stay Litigation Pending Arbitration be denied.

                                  Respectfully submitted,

                                  /s/ Robert B. Greenberg  
                                  Asher, Gittler, Greenfield & D'Alba, Ltd.  
                                  200 West Jackson Boulevard  
                                  Suite 1900  
                                  Chicago, Illinois 60606  
                                  (312) 263-1500  
1/23/08                           IL ARDC#:  01047558

## **CERTIFICATE OF SERVICE**

ROBERT B. GREENBERG, being duly sworn, says that he is an attorney associated with Asher, Gittler, Greenfield & D'Alba, Ltd., attorneys for Plaintiff in this action, and that he served the attached Plaintiff's Memorandum upon:

> **Thurston C. Bailey**
> **Patricia Costello Slovak**
> **Schiff Hardin LLP**
> **6600 Sears Tower**
> **Chicago, Illinois 60606**

by depositing a copy in the United States mails, postage paid, at 200 West Jackson Boulevard, Chicago, Illinois 60606, on the 23rd day of January 2008.

Service was accomplished pursuant to ECF as to Filing Users, and Counsel shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


/s/ Robert B. Greenberg
Asher, Gittler, Greenfield & D'Alba, Ltd.
200 West Jackson Boulevard
Suite 1900
Chicago, Illinois 60606
(312) 263-1500
IL ARDC#:  01047558