**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MISCELLANEOUS WAREHOUSEMEN'S LOCAL 781 HEALTH AND WELFARE FUND,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **No. 07 C 6878** |
| **v.** | ) ) | **Judge Kennelly** |
| **SUNNYSIDE CORPORATION,** | ) ) | **Magistrate Judge Valdez** |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO STAY LITIGATION PENDING ARBITRATION**

Defendant, Sunnyside Corporation ("Sunnyside") hereby submits its Reply to Plaintiff's Response to Defendant's Motion to Stay Litigation Pending Arbitration ("Sunnyside's Motion") and states as follows:

**INTRODUCTION**

The Miscellaneous Warehousemen's Local 781 Health and Welfare Fund (the "Fund")'s Response (the "Fund's Response") to Sunnyside's Motion ignores the fundamental issue in this case – that the Fund is trying to collect contributions for individuals who are not covered by the Collective Bargaining Agreement (the "CBA") and who are not participants in the Fund. Additionally, Sunnyside's Motion is not requesting that the Fund arbitrate its collection action, nor is it disputing the Fund's right to bring an action to collect unpaid contribution amounts. Sunnyside is only requesting to stay the Fund's collection action until the Union and Sunnyside have arbitrated and determined whether Sunnyside is obligated to make contributions on behalf

of the individuals for whom the Fund seeks to collect. Furthermore, as discussed below, the cases addressed in the Fund's Response do not preclude this Court from granting Sunnyside's Motion. Lastly, failing to stay this litigation could harm Sunnyside, while a stay causes no damages to the Fund.

**ARGUMENT**

**A.    This Case and the Pending Arbitration Involve Interpretation Of The CBA To Determine Whether Sunnyside Is Obligated To Make Contributions To The Fund On Behalf Of Leased, Temporary Workers.**

As the Fund's Response reveals, it is undisputed that: (1) the Fund's lawsuit is a collection action seeking allegedly delinquent contributions that Sunnyside did not pay on behalf of certain non-union, leased temporary workers; (2) Miscellaneous Warehousemen's Local 781 (the "Union") and Sunnyside currently have a pending arbitration concerning whether, among other things, Sunnyside is required to make contributions to the Fund on behalf of leased, temporary workers pursuant to the CBA; (3) determining whether Sunnyside is obligated to make contributions to the Fund on behalf of leased, temporary workers requires interpretation of the meaning and intent of the CBA; and (4) the gravamen of this dispute is whether the CBA obligates Sunnyside to make contributions, which the Fund claims are delinquent, on behalf of temporary, leased workers. These undisputed facts are important because stay of a lawsuit pending arbitration is appropriate when interpretation of a collective bargaining agreement provision is critical to the lawsuit. *See, e.g., Tice v. American Airlines*, 288 F.3d 313, 319 (7th Cir. 2002); *Pietro Scalzitti Co. v. Intl. Un. of Operating Engineers, Local No. 150*, 351 F.2d 576 (7th Cir. 1965).

**B.    Because The Fund May Only Collect Contributions Pursuant To The CBA, Sunnyside's Motion Should Be Granted To Enable An Arbitrator to Determine Whether Sunnyside Is Actually Obligated To Make The Contributions The Fund Seeks To Collect.**

The Fund incorrectly presumes that its collection action should proceed without regard for the fact that Sunnyside is not, or may not be, obligated under the CBA, to make contributions to the Fund on behalf of leased, temporary workers.  If the Fund's presumption was accurate, the Fund could initiate collection actions seeking contributions on behalf of any person who is unrelated to, and not covered by, the benefit provisions of the CBA.  In fact, however, this is not the case.  The Trust Agreement states "[e]xcept as otherwise required by law, no Employer shall be liable for any payments to the Trust Fund other than for contributions due *pursuant to a Collective Bargaining Agreement.***"**  *See* §6.04 of Article VI of the Trust Agreement, attached as Exhibit B to Defendant's Motion.[1]    (emphasis added).  Because Sunnyside must have an obligation to make contributions under the CBA before the Fund can collect or seek to recover them, the Fund's collection lawsuit cannot and should not proceed until the dispute concerning Sunnyside's obligations has been resolved.

Moreover, the Fund's argument that it cannot be bound by the pending arbitration, or by the Union's negotiations about Sunnyside's obligation to make contributions, is without merit.  Clearly, an obligation to make contributions is a condition precedent for a collection action.  As such, because the question of who is covered by the Fund (and entitled to have contributions made on their behalf) is determined solely by the terms of the CBA, the Fund is necessarily bound by the Union's actions and intent.  There is also no separate participation or other agreement between Sunnyside and the Fund permitting the Fund to interpret the CBA or, more importantly, to trump the CBA, with respect to defining the class of workers for whom

---

[1] The Trust Agreement is also attached as Exhibit A to the Fund's Response.

Sunnyside must make contributions. Indeed, it is the Union and Sunnyside, not the Fund, that are responsible for identifying, in negotiations and in arbitration, what class of persons are covered by the CBA and entitled to benefits of the Fund.

C.    *Schneider* and *Mosbeck* **are Distinguishable From the Facts of This Case.**

In its Response, the Fund asserts that the decisions in *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 373 (1984) and *Pipefitters Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc.,* 856 F.2d 837, 840 (7th Cir. 1988) control in this matter and support the denial of Sunnyside's Motion. These cases, however, are distinguishable from the facts here. The *Schneider* case involved an employer's motion to dismiss a collection action by a multi-employer trust fund. The issue was whether the trust fund could seek judicial enforcement of trust provisions (collection action) without first resorting to arbitration. 466 U.S. at 373. There, the arbitration clauses of the collective bargaining agreement stated, "arbitration is required only of 'differences that *arise between the Company and the Union or any employee* as to the meaning of the provisions of this agreement.'" *See id.* at 369-370, and 374 (emphasis added). Under those circumstances, the court reasoned that the collective bargaining agreement only applied to disputes between the employer and the Union—indicating that there was no intent requiring the trust, which was empowered to enforce the trust provisions, to submit its collection action to arbitration. *See id.* at 374-375.

Similarly, *Mosbeck* involved an employer's motion to dismiss a collection action filed by a multi-employer trust fund, alleging that the collection action was subject to arbitration. 856 F.2d at 838. The trust agreement permitted the trust to bring collection actions in court and the collective bargaining agreement's arbitration procedures required that only disputes "aris[ing] between the parties hereto or between the *employer and an employee*" be submitted to arbitration. *See id.* at 841-842. (emphasis added). The Court held that neither the trust

agreement nor the collective bargaining agreement manifested an intent to arbitrate the fund's collection action.  *See id.* at 842.

In contrast, the facts of this case differ from both *Schneider* and *Mosbeck* in several respects.  First, and most notably, Sunnyside is not asking the Fund to arbitrate its collection action, but instead seeks to allow the Union and Sunnyside to arbitrate the meaning of the CBA in order to determine whether Sunnyside has an obligation under the CBA to make any contributions on behalf of leased, temporary workers.   Second, Sunnyside's Motion seeks to stay the Fund's collection action rather than dismiss it.  Third, the arbitration provisions of the CBA provide that all disputes regarding interpretation of the terms of the Agreement must be submitted to arbitration and those terms are not limited, as in *Schneider* and *Mosbeck*, to disputes involving only employers, employees and/or the Union.  *See* Exhibit A (Article XXVIII of CBA) to Defendant's Motion.  Finally, the collections-related provisions of the Trust Agreement state that employers cannot be liable for any payments to the Fund that are not due pursuant to the CBA—indicating that having an obligation to make contributions for a class of workers under the CBA is a prerequisite to initiating collections.  *See* Exhibit B (Trust Agreement Article 6.04) to Defendant's Motion.   Based on these distinctions, it is clear that neither *Schneider* nor *Mosbeck* controls this case.[2]

**D.      The Fund's Assertion that the Cases Sunnyside Cited Do Not Apply Where There is a Trust Agreement Has No Merit.**

In its Motion, Sunnyside cited to *Carpenter's Pension Fund v. Market Contracting Services, Inc.*, 2001 WL 197054 (N.D. Ill. 2001), *Carpenter's Pension Fund v. Fonsa*, 2000 WL 1469439 (N.D. Ill. 2000) and *Jaffee v. Shanin Co.,*  763 F.Supp. 286 (N.D. Ill. 1991) for the

---

[2] Here, Sunnyside has never made contributions because neither the CBA or past practices dictates that it had an obligation to make contribution on behalf of leased, temporary workers.

proposition that it is appropriate to stay litigation between an employer and an employee benefit fund pending arbitration when there is a dispute requiring the interpretation of a collective bargaining agreement. The Fund erroneously asserts that those cases only apply as precedent in circumstances where no trust agreement exists. Although there were no separate trust agreements in those cases, each case examined the arbitration provisions of a collective bargaining agreement to ascertain the parties' intent to arbitrate particular claims and distinguished those provisions from the ones in *Schneider* and *Mosbeck*. None of those courts limited their analysis to a situation in which no separate trust agreement existed and logic does not support such a limitation. The courts' analyses in those cases are, taken together, a useful guide to the interpretation of the arbitration provisions of the CBA in this case.

Furthermore, *Shanin* is particularly analogous to the circumstances here. In that case, a trust filed a collection action against an employer which disputed its obligation to make contributions sought on behalf of certain part-time employees under the collective bargaining agreement. There, even though there was no separate trust agreement, the collective bargaining agreement, which contained trust-related provisions, operated in a manner similar to those in the Fund's Trust Agreement here. Those provisions established the trust, outlined the powers of the trustees, and empowered the trustees "to take whatever action they deem necessary to collect payment[s]." 763 F.Supp. at 790-91. Notably, although the arbitration procedures of the agreement, made some "narrow references to the Union, employers and employees," most of the other arbitration procedures were not limited to a particular party and one indicated that all disputes regarding interpretation of the collective bargaining agreement were subject to arbitration. *Id.* at 790-91. The court held that because the dispute concerning the employer's obligation to make contributions was a threshold issue that required interpretation of the

collective bargaining agreement, that dispute had to be resolved by arbitration before any collection action by the Fund could proceed.  The court dismissed the plaintiff's collection action.  *Id.* at 391-392.

The Trust Agreement and the CBA have provisions similar to those in *Shanin*. Specifically, the CBA has a provision that is not limited to particular parties requiring arbitration of all disputes related to its interpretation.  *See* Exhibit A (Article XXVIII of the CBA).  The arbitration provisions of the CBA that refer to employees and/or management only do so when outlining the manner in which an employee must file a grievance.[3]   All other provisions refer generally to the party seeking arbitration or the "other party."   In addition, the rights of the trustees to initiate collection actions in the Trust Agreement are nearly identical to those in *Shanin* in that they allow the Fund to initiate any legal proceeding to collect contributions that are due pursuant to the CBA.  *See* Exhibit B (Article 6.02).  Most importantly, however, this case also involves a threshold question regarding Sunnyside's obligations under the CBA—whether it must make contributions on behalf of temporary, leased workers—which must be resolved before a collection action may continue.

**E.    Denying Sunnyside's Motion May Result In Harm To Sunnyside.**

Article 6.04 of the Trust Agreement states, "[i]n no event shall the employers, directly or indirectly, receive any refund of contributions made by them to the Trust, except in a case of a bona fide mistake."  *See* Exhibit B.  As this language suggests, once Sunnyside makes a contribution to the Fund, obtaining refunds of those amounts will be difficult and will likely involve costly litigation.  On the other hand, there is no financial harm to the Fund if this

---

[3] In the Fund's Response, it asserts that the mention of employees and/or management in the arbitration provisions of the CBA means that the provisions only cover disputes between employees and management.  As is clear from *Shanin* and the CBA's arbitration provisions, the Fund's assertion has no merit.

collection action is stayed.  The arbitrator will determine whether leased, temporary workers are entitled to have payments made on their behalf pursuant to the CBA.  If that decision is that the workers should have been covered by the Fund's benefit plan, the Fund's right to collect contributions will not be hindered or altered. There is no reason to expose Sunnyside to the expense of unnecessary litigation and Sunnyside submits that this Court should not do so.

**F.    Conclusion**

For the reasons set forth above and for those stated in Defendant's Motion and supporting Memorandum, Defendant Sunnyside Corporation respectfully requests that this Court grant its Motion to Stay this litigation pending the completion of the pending arbitration between the Union and Sunnyside.

Respectfully submitted,

Sunnyside Corporation

By: /s/_____Thurston C. Bailey_____
    One of its Attorneys

Patricia Costello Slovak
Atty No.: 263439
Thurston C. Bailey
Atty No.: 24006783
Schiff Hardin LLP
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

## <u>CERTIFICATE OF SERVICE</u>

I, Thurston C. Bailey, hereby certify that on February 12, 2008, I served the foregoing Defendant's Reply to Plaintiff's Response to Defendant's Motion to Stay Litigation Pending Arbitration United States First Class mail and I electronically filed it using the CM/ECF system, which will send notification of such filing to the following counsel of record:

> Robert B. Greenberg
> Asher, Gittler, Greenfield & D'Alba, Ltd.
> 200 West Jackson Blvd.
> Suite 1900
> Chicago, Illinois  60606
> 312-263-1500
> rbg@ulaw.com

/s/_____Thurston C. Bailey_____
Thurston C. Bailey

Schiff Hardin LLP
6600 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606
Tel. (312) 258-5500
Fax (312) 258-5600
No. 90219
CH1\5451110.6